[No. S031258. Dec. 18, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
HOWARD BARTON, Defendant and Appellant.

**COUNSEL**

Cleary & Sevilla and Charles M. Sevilla for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rudolf Corona, Jr., William M. Wood and Barry J. T. Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KENNARD, J.**—In a criminal trial, it is ordinarily the trial court's duty to instruct the jury not only on the crime with which the defendant is charged, but also on any lesser offense that is both included in the offense charged and shown by the evidence to have been committed.

Here, defendant was charged with murder. At trial, the parties presented evidence from which the jury could reasonably conclude that he was guilty not of murder, but of voluntary manslaughter, a lesser offense included within the crime of murder. For tactical reasons, however, defendant asked the trial court not to instruct the jury on voluntary manslaughter; the court denied the request. The jury convicted defendant of voluntary manslaughter, and the trial court sentenced him to a 10-year prison term. Defendant now contends that the trial court should not have given the instruction at issue.

We conclude that a defendant may not invoke tactical considerations to deprive the jury of the opportunity to consider whether the defendant is guilty of a lesser offense included within the crime charged. A trial court should instruct the jury on any lesser included offense supported by the evidence, regardless of the defendant's opposition. Thus, the trial court in this case acted properly when, over defendant's objection, it instructed the jury on voluntary manslaughter. We therefore affirm the judgment of the Court of Appeal, which upheld defendant's conviction.

## I

Defendant was charged with the murder of Marco Sanchez. (Pen. Code, § 187; unless otherwise stated, all statutory references are to the Penal Code.) The relevant facts are these:

On the morning of February 22, 1990, while driving her car on Grand Avenue in Pacific Beach, Andrea Barton, defendant's 20-year-old daughter, had an unpleasant encounter with Marco Sanchez, the victim in this case. Eyewitness accounts of this incident differed. Most witnesses, however, testified that Sanchez, whose car was behind Andrea's, honked his horn when Andrea's car stalled in an intersection, and that Andrea responded with a rude gesture. Sanchez then cut into Andrea's lane so close to Andrea's car that she had to brake and swerve to the side of the road to avoid a collision, whereupon Sanchez drove his car next to Andrea's and spat on the closed passenger window of Andrea's car.

Extremely upset over the incident, Andrea drove to defendant's nearby real estate office and told him what had occurred. Defendant suggested that they look for Sanchez's car. Defendant, who managed several apartment buildings and frequently carried large sums of money, had a permit to carry a concealed weapon for business purposes only. He had received training in the use of semiautomatic weapons during the six years he spent in the Marine Corps (six months on active duty, five and one-half years reserve duty), and owned about fifteen guns. He customarily carried a semiautomatic handgun in his pocket, and had one with him on this occasion.

Defendant and Andrea located Sanchez's car in a nearby shopping center. They found Sanchez at one of the stores. A lengthy argument ensued. Defendant waved his finger in Sanchez's face and swore at him. According to one prosecution witness, Sanchez was also mad and swearing, but another prosecution witness described Sanchez as frightened and defensive.

Sanchez left the store, followed by defendant and Andrea. About a minute later, Andrea returned to the store. She told a cashier to call the police because Sanchez's car "is going to get really thrashed."

In the meantime, Sanchez entered another store, where he briefly talked to his 12-year-old sister-in-law, Delicia Goodwin, who had been with him during the incident at the intersection. Sanchez then left the store and walked rapidly to his car, opened the driver's side door and got in. Before Sanchez had a chance to close the car door, defendant drew his gun and moved in front of the door. He assumed what witnesses described as a "police stance,"

holding the gun in his right hand and resting it on his left palm, with his knees slightly bent. Daryl Zack, the owner of a nearby coin store, heard defendant tell Sanchez, "Get the fuck out of the car or I'll shoot you." Zack and several other witnesses heard defendant say repeatedly that if Sanchez did not "drop the knife" or "put the knife away," he would "blow [Sanchez's] head off." None of the witnesses saw Sanchez with a knife.[1]

Defendant then shot Sanchez. According to some witnesses, Sanchez made an abrupt movement just before the shot was fired; others saw no such movement. The shot struck Sanchez in the back and lodged in his neck; he got out of the car's passenger-side door and staggered to a nearby store, where he collapsed, dead. Defendant waited at the scene for the police to arrive.

Prosecution witness Eugene Wolberg, a police criminalist with the San Diego Police Department, testified that defendant fired the fatal shot while standing three and one-half to four feet from Sanchez. Based on the path traveled by the bullet, Wolberg concluded that at the moment of impact Sanchez was probably leaning over in the driver's seat with his head down, looking away from defendant towards the passenger door; his position was consistent with an attempt either to pick up something from the floorboard or to move to the passenger side of the car. Police found a closed folding knife under the passenger seat and a pair of scissors beneath an electrical cord on the passenger floorboard.

Defendant, testifying on his own behalf, claimed that the shooting was an accident. He gave this version of events: When he and Andrea first encountered Sanchez at the shopping center, Andrea complained to Sanchez about his spitting on her car window. In response, Sanchez "went berserk," and told Andrea, "Well, do something about it, bitch." Andrea and Sanchez then began to argue, soon joined by defendant. As defendant, Andrea, and Sanchez left the store, Sanchez assumed a "fighting stance," and challenged defendant to a fight. Defendant told Andrea to call the police. Saying, "I'm going to go get my witnesses at the store," Sanchez went into a store and came out with a "gal."[2] The two of them looked at defendant, laughed, and went back into the store. Moments later, Sanchez came out of the store alone, walked rapidly to his car, and got in. When defendant stepped in front of the car door and asked what he was doing, Sanchez replied: "None of

---

[1] Because none of the witnesses were close to the car, it would have been difficult for them to tell whether Sanchez was holding a knife. Police found two screwdrivers on the floorboard next to the driver's door; it is thus conceivable that Sanchez was holding a screwdriver that defendant mistook for a knife.

[2] It is unclear whether this was Goodwin, Sanchez's 12-year-old sister-in-law, or someone else.

your fucking business." Sanchez then swung at defendant, who fell back against the open car door. Defendant saw what looked like a blade in Sanchez's hand. Defendant drew his gun to detain Sanchez until the police arrived, put a round in the chamber and yelled at Sanchez to put the knife on the ground and to get out of the car. When Sanchez made a sudden movement toward defendant, defendant closed his eyes, stepped back, and the gun accidentally discharged. Defendant denied any intent to shoot.

Both the prosecution and the defense offered expert testimony regarding the likelihood that defendant could accidentally have discharged the gun. Criminalist Eugene Wolberg, who testified for the prosecution, stated that defendant's gun had a "trigger pull" of 7.1 pounds, meaning that the gun would fire if the trigger was subjected to 7.1 pounds of pressure, which he described as a "medium-weight pull." Because the gun was a "single action" pistol, it was more likely to discharge accidentally than a "double action" pistol, as the former will fire when the trigger has traveled a shorter distance. Defense expert Richard Whalley, a criminalist and former head of the San Diego Police Department's crime laboratory, testified that the trigger on double-action guns must generally travel about two centimeters (twenty millimeters) for the gun to discharge, while defendant's single-action gun would discharge when the trigger traveled only one millimeter, a factor that Whalley considered "very significant" in assessing the likelihood that the fatal bullet that killed Sanchez was discharged accidentally.

In the opinion of defense witness Kevin Gilmartin, a psychiatrist, defendant responded to Sanchez's sudden movement by firing reflexively, "in fear of his life." Another defense witness, psychiatrist Haig Koshkarian, explained that persons who perceive themselves to be in great danger enter a "fight or flight state" in which they react reflexively to any sudden movement or sound.

Defendant also presented character evidence of his dependability, honesty, and lack of ethnic or racial bias, and of Sanchez's reputation for violence.

During a conference on proposed jury instructions, defense counsel asked the trial court not to instruct on voluntary manslaughter (§ 192, subd. (a)) as a lesser offense included in the crime of murder. He contended that since voluntary manslaughter requires an intent to kill, it was inconsistent with the defense theory that the killing of Sanchez was accidental. The prosecutor asked the court to give the instruction, stating: "Whether or not it's [a verdict] that I would be urging the jury to reach, I certainly believe it's one they could arrive at based on the state of the evidence in this case." Over defendant's objection, the trial court instructed the jury that it should convict

defendant of the lesser offense of voluntary manslaughter if it found either that the killing occurred in a sudden quarrel or heat of passion, or that defendant killed Sanchez in the honest but unreasonable belief that he had to defend himself against imminent peril to life or a threat of great bodily injury.[3] The jury acquitted defendant of murder, but convicted him of voluntary manslaughter.

Defendant appealed, arguing that the evidence at trial did not support an instruction on voluntary manslaughter, and that the trial court should not have given the instruction over his objection. The Court of Appeal disagreed. It held that a trial court must instruct on every lesser offense included within the charged offense, if supported by the evidence, even when a defendant objects to the instruction as being inconsistent with the defendant's theory of the case. The Court of Appeal concluded that in this case the evidence presented at trial supported a conviction for voluntary manslaughter, and that therefore an instruction on that crime was proper. But the Court of Appeal also pointed out that certain decisions of this court had given rise to confusion regarding the scope of a trial court's relatively broad duty to instruct on lesser included offenses, and its somewhat more limited duty to instruct on possible defenses to the crime charged. To resolve this confusion, we granted defendant's petition for review.

## II

In *People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913] (hereafter *Sedeno*), we explained when a trial court must instruct on lesser included offenses. There, the defendant was charged with murder for shooting a police officer with the officer's own gun. At trial, the defendant argued that he was not guilty of murder because mental illness rendered him incapable of acting with malice. He also contended, based on his own testimony, that the victim was shot when the gun accidentally discharged during a struggle between the officer and himself, and that he lacked the intent to kill. The jury convicted the defendant of first degree murder. On appeal, the defendant argued that the trial court had erred in not instructing the jury on the lesser included offenses of voluntary and involuntary manslaughter and on the defenses of unconsciousness and self-defense. We found no error in the trial court's failure to instruct on voluntary manslaughter, unconsciousness and self-defense, but concluded that the trial court should have instructed the jury on involuntary manslaughter.

We explained that a trial court must, sua sponte, or on its own initiative, instruct the jury on lesser included offenses "when the evidence

---

[3]The trial court also instructed the jury on the lesser included offense of involuntary manslaughter. Defendant does not challenge the propriety of that instruction.

raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged." (*Sedeno, supra,* 10 Cal.3d at p. 715.)[4] "The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to it being given. [Citations.] Just as the People have no legitimate interest in obtaining a conviction of a greater offense than that established by the evidence, a defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense." (*Id.* at p. 716, fn. omitted.)

In contrast to lesser included offenses, a trial court's duty to instruct, sua sponte, or on its own initiative, on particular defenses is more limited, arising "only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*Sedeno, supra,* 10 Cal.3d at p. 716; see also *People* v. *Montoya* (1994) 7 Cal.4th 1027, 1047 [31 Cal.Rptr.2d 128, 874 P.2d 903].)

In a footnote, *Sedeno* elaborated on the difference between the trial court's limited duty to instruct, sua sponte, on a particular defense, and its broader duty to instruct, sua sponte, on lesser included offenses. After stating that a trial court should not instruct on a *defense* that is inconsistent with the defendant's theory of the case, *Sedeno* pointed out that when there is evidence at trial that the defendant is guilty not of the crime charged, but of a *lesser included offense,* the court must instruct on the lesser offense even when the defendant claims to be innocent of both the greater *and* the lesser offense. In the court's words: "If it appears to the court . . . that there is substantial evidence that would support a defense inconsistent with that advanced by a defendant, the court should ascertain from the defendant whether he wishes instructions on the alternative theory. Such inquiry will afford assurance that the theory has not been inadvertently overlooked by counsel. [Citation.] [¶] When the charged offense is one that is divided into degrees or encompasses lesser offenses, and there is evidence from which the jury could conclude that the lesser offense had been committed, the court must instruct on the alternate theory *even if it is inconsistent with the defense elected by the defendant* under the rule obliging the court to instruct on lesser included offenses discussed *supra.*" (*Sedeno, supra,* 10 Cal.3d at p. 717, fn. 7, italics added.)

---

[4]We later clarified that the trial court need not instruct on a lesser included offense whenever *any* evidence, no matter how weak, is presented to support an instruction, but only when the evidence is substantial enough to merit consideration by the jury. (*People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685 & fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].)

Defendant asks us to overrule *Sedeno, supra,* 10 Cal.3d 703. The trial court's duty to instruct on lesser included offenses, defendant contends, should be no greater than its obligation to instruct on defenses. Thus, he asserts, a trial court should not instruct on a lesser included offense when, as here, the evidence supporting the lesser included offense is inconsistent with the defendant's theory of the case and the defendant, for tactical reasons, asks the court not to give the instruction. As we shall explain, defendant's contention is not persuasive.

■■■ "Our courts are not gambling halls but forums for the discovery of truth." *(People* v. *St. Martin* (1970) 1 Cal.3d 524, 533 [83 Cal.Rptr. 166, 463 P.2d 390].) Truth may lie neither with the defendant's protestations of innocence nor with the prosecution's assertion that the defendant is guilty of the offense charged, but at a point between these two extremes: the evidence may show that the defendant is guilty of some intermediate offense included within, but lesser than, the crime charged. A trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function. Consequently, neither the prosecution nor the defense should be allowed, based on their trial strategy, to preclude the jury from considering guilt of a lesser offense included in the crime charged. To permit this would force the jury to make an "all or nothing" choice between conviction of the crime charged or complete acquittal, thereby denying the jury the opportunity to decide whether the defendant is guilty of a lesser included offense established by the evidence.[5]

Defendant's proposed rule permitting the defense, upon request, to bar the trial court from instructing the jury on lesser included offenses supported by the evidence would, as just stated, not only impair the jury's search for truth, but would also be unfair to the prosecution. Sometimes the prosecution's evidence that a defendant has committed the crime charged may be relatively weak, whereas the evidence of a lesser included offense may be much stronger. In that case, a prosecutor need not, and generally does not, separately charge a defendant with the lesser included offense. (§ 1159; *Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 517 [183 Cal.Rptr. 647, 646 P.2d 809].) If instructions on a lesser included offense could be barred at the defendant's request, the prosecutor would be denied the opportunity to argue to the jury that the defendant, even if not guilty of the crime charged, is at least guilty of the lesser included offense.

---

[5]A trial court need not, however, instruct on lesser included offenses when the evidence shows that the defendant is either guilty of the crime charged or not guilty of any crime (for example, when the only issue at trial is the defendant's identity as the perpetrator). Because in such a case "there is no evidence that the offense was less than that charged" *(Sedeno, supra,* 10 Cal.3d at p. 715), the jury need not be instructed on any lesser included offense.

When, however, the question is whether the trial court must, on its own initiative, instruct the jury on *defenses* not asserted by the defendant, different considerations arise. Failure to so instruct will not deprive the jury of the opportunity to consider the full range of criminal offenses established by the evidence. Nor is the prosecution denied the opportunity to seek conviction on all offenses included within the crime charged. Moreover, to require trial courts to ferret out all defenses that might possibly be shown by the evidence, even when inconsistent with the defendant's theory at trial, would not only place an undue burden on the trial courts but would also create a potential of prejudice to the defendant. As we said in *Sedeno, supra,* 10 Cal.3d at pages 716-717: " 'Appellate insistence upon *sua sponte* instructions which are inconsistent with defense trial theory or not clearly demanded by the evidence would hamper defense attorneys and put trial judges under pressure to glean legal theories and winnow the evidence for remotely tenable and sophistical instructions.' "

As set forth above, sound policy considerations underlie the distinction that *Sedeno, supra,* 10 Cal.3d 703, drew between a trial court's relatively broad duty to instruct on lesser included offenses and its less expansive duty to instruct on defenses. Nevertheless, defendant insists that *Sedeno* was undermined by this court's recent decision in *People* v. *Saille* (1991) 54 Cal.3d 1103 [2 Cal.Rptr.2d 364, 820 P.2d 588].

In *Saille*, the defendant shot and killed a patron in a bar. The evidence showed that at the time of the killing the defendant was intoxicated, having a blood-alcohol level of .19 percent. The jury, which was instructed on both first and second degree murder, found that the murder was a deliberate, premeditated killing, and thus was murder of the first degree. On appeal, the defendant argued that the trial court should, on its own initiative, have instructed the jury to consider defendant's intoxication in determining whether he had premeditated and deliberated before the killing. We disagreed, holding that such an instruction would be a "pinpoint instruction" relating specific facts to the elements of the offense, and that the trial court need not give such instructions unless requested by a party. (*People* v. *Saille, supra,* 54 Cal.3d at p. 1120.)

Contrary to defendant's assertion, there is no conflict between *Saille* and *Sedeno, supra,* 10 Cal.3d 703. As just noted, *Saille* concerned "pinpoint instructions" relating particular facts to the elements of the offense charged. It did not discuss when a trial court must, on its own initiative, instruct on

either lesser included offenses[6] or on defenses; indeed, *Saille* specifically noted that intoxication is not a "defense." (*People* v. *Saille, supra*, 54 Cal.3d at pp. 1118-1119.) *Saille* thus sheds no light on the issue here: the circumstances under which a trial court must instruct the jury on lesser included offenses and on defenses.

Nor is there merit to defendant's argument that *Sedeno, supra*, 10 Cal.3d 703, cannot be reconciled with the holding in a number of decisions that a defendant may not invoke a trial court's failure to instruct on a lesser included offense as a basis on which to reverse a conviction when, for tactical reasons, the defendant persuades a trial court not to instruct on a lesser included offense supported by the evidence. (*People* v. *Hardy* (1992) 2 Cal.4th 86, 184 [5 Cal.Rptr.2d 796, 825 P.2d 781]; *People* v. *Duncan* (1991) 53 Cal.3d 955, 969 [281 Cal.Rptr. 273, 810 P.2d 131]; *People* v. *Cooper* (1991) 53 Cal.3d 771, 827-831 [281 Cal.Rptr. 90, 809 P.2d 865]; *People* v. *Graham* (1969) 71 Cal.2d 303, 317-319 [78 Cal.Rptr. 217, 455 P.2d 153]; *People* v. *Scobie* (1973) 36 Cal.App.3d 97, 101 [111 Cal.Rptr. 600]; see also *People* v. *Gallego* (1990) 52 Cal.3d 115, 182-183 [276 Cal.Rptr. 679, 802 P.2d 169].) In that situation, the doctrine of invited error bars the defendant from challenging on appeal the trial court's failure to give the instruction.

The doctrine of invited error does not, however, *vindicate* the decision of a trial court to grant a defendant's request not to give an instruction that is otherwise proper: the error is still error. (*People* v. *Graham, supra*, 71 Cal.2d at p. 319.) The cases cited in the preceding paragraph and relied on by defendant do not hold that a trial court must honor such a request; they hold only that when the trial court accedes to the defendant's wishes, the defendant may not argue on appeal that in doing so the court committed prejudicial error, thus requiring a reversal of the conviction. These holdings are consistent with the rule set forth in *Sedeno, supra*, 10 Cal.3d at pages 715-716, that the trial court must instruct on a lesser included offense when the evidence would support a conviction for the offense, notwithstanding the defendant's objection to the instruction.[7]

---

[6]The trial court in *People* v. *Saille, supra*, 54 Cal.3d 1103, instructed the jury on second degree murder, the lesser included offense to which an instruction on intoxication would have been relevant; thus, there was no claim in that case that the trial court failed to instruct the jury on second degree murder as a lesser included offense.

[7]Defendant points to dicta in several decisions of the Courts of Appeal stating, without extended analysis, that a trial court need not instruct the jury on a lesser included offense that is inconsistent with the defense proffered at trial. (*People* v. *Rhodes* (1989) 215 Cal.App.3d 470, 474 [263 Cal.Rptr. 603]; *People* v. *Bobb* (1989) 207 Cal.App.3d 88, 91 [254 Cal.Rptr. 707]; *People* v. *Hooper* (1986) 181 Cal.App.3d 1174, 1183 [226 Cal.Rptr. 810].) For the

## III

In the preceding part, we reiterated the soundness of the distinction drawn in *Sedeno, supra,* 10 Cal.3d 703, between the trial court's broad duty to instruct on lesser included offenses and its narrower obligation to instruct on particular defenses. We recognize, however, that the difference between the two categories is not always clear. This is particularly true with respect to voluntary manslaughter, as discussed below.

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) A defendant who commits an intentional and unlawful killing but who lacks malice is guilty of the lesser included offense of voluntary manslaughter. (§ 192.) But a defendant who intentionally and unlawfully kills lacks malice only in limited, explicitly defined circumstances: either when the defendant acts in a "sudden quarrel or heat of passion" (§ 192, subd. (a)), or when the defendant kills in "unreasonable self-defense"—the unreasonable but good faith belief in having to act in self-defense (see *In re Christian S.* (1994) 7 Cal.4th 768 [30 Cal.Rptr.2d 33, 872 P.2d 574]; *People* v. *Flannel, supra,* 25 Cal.3d 668).

Ordinarily, it is the defendant who offers evidence to show that because the killing occurred in a sudden quarrel or heat of passion, or in unreasonable self-defense, the crime committed is not murder, but only voluntary manslaughter. For this reason, voluntary manslaughter closely resembles an affirmative defense (placing on the defendant the burden of producing evidence of facts which, if believed by the jury, will result in the defendant's acquittal of the crime charged). Because of this similarity, a defendant's attempt to show that a killing was only voluntary manslaughter rather than murder is sometimes referred to as a "partial defense," a phrase that blurs the distinction between lesser included offenses and defenses.

One form of voluntary manslaughter in particular, the one that is predicated on unreasonable self-defense, is quite similar to the "defenses" referred to in *Sedeno, supra,* 10 Cal.3d at page 716. This similarity arises partly from the use of the word "defense" in the phrase "unreasonable self-defense," and partly from the close link between unreasonable self-defense and an actual defense, that is, true self-defense. The sole difference between true self-defense and "unreasonable self-defense" is that the former applies only when the defendant acts in response to circumstances that cause

reasons set forth above, these cases cannot be reconciled with *Sedeno,* which requires the trial court to instruct on lesser included offenses supported by the evidence even when they are "inconsistent with the defense elected by the defendant." (*Sedeno, supra,* 10 Cal.3d at p. 717, fn. 7.) To the extent that they are inconsistent with *Sedeno* and this opinion, these cases are disapproved.

the defendant to fear, and would lead *a reasonable person* to fear, the imminent infliction of death or great bodily injury (§§ 197, 198); unreasonable self-defense, on the other hand, does not require the defendant's fear to be reasonable. (*In re Christian S., supra*, 7 Cal.4th at p. 773.) Because unreasonable self-defense closely resembles true self-defense, it is tempting to treat unreasonable self-defense as a "defense" as that term is used in *Sedeno, supra*, 10 Cal.3d at pages 716-717. Indeed, in *People* v. *Wickersham* (1982) 32 Cal.3d 307 [185 Cal.Rptr. 436, 650 P.2d 311] (hereafter *Wickersham*) this court erroneously yielded to that temptation.

In *Wickersham, supra*, 32 Cal.3d 307, the defendant was charged with murder after she had fatally shot her husband. At trial, she denied intentionally killing her husband, claiming that her husband had attempted to grab the gun, which discharged accidentally during the ensuing struggle. The trial court did not instruct the jury on voluntary manslaughter, and the jury convicted defendant of first degree murder. On appeal, defendant argued that the trial court erred when it failed to instruct the jury, on its own initiative or sua sponte, on the lesser included offense of voluntary manslaughter, either based on a killing occurring in a sudden quarrel or heat of passion, or based on a killing arising from unreasonable self-defense.

*Wickersham* held that the evidence was insufficient to support an instruction by the trial court on voluntary manslaughter. It reiterated the holding of *Sedeno, supra*, 10 Cal.3d 703, that a trial court must, sua sponte, instruct on a *lesser included offense* when the evidence raises a question as to whether all of the elements of the charged offense were present, regardless of the defendant's theory of the case, but that the trial court need not instruct on a *defense* that is inconsistent with the defendant's theory at trial. Then, in addressing the defendant's contention that the trial court was obligated to instruct the jury sua sponte on unreasonable self-defense, *Wickersham* stated, without explanation, that "unreasonable self-defense comes within *Sedeno*'s category of 'defenses' for purposes of the obligation to instruct *sua sponte*." (*Wickersham, supra*, 32 Cal.3d at p. 329.) This language from *Wickersham* was described by the Court of Appeal in the case now before us as "inexplicable and inconsistent with the theories and rationales developed in *Sedeno*." We agree.

Contrary to the statement in *Wickersham, supra*, 32 Cal.3d at page 329, "unreasonable self-defense" is, as we explained earlier, not a true defense; rather, it is a shorthand description of one form of voluntary manslaughter. And voluntary manslaughter, whether it arises from unreasonable self-defense or from a killing during a sudden quarrel or heat of passion, is not a defense but a crime; more precisely, it is a lesser offense included in

the crime of murder. Accordingly, when a defendant is charged with murder the trial court's duty to instruct sua sponte, or on its own initiative, on unreasonable self-defense is the same as its duty to instruct on any other lesser included offense: this duty arises whenever the evidence is such that a jury could reasonably conclude that the defendant killed the victim in the unreasonable but good faith belief in having to act in self-defense.

We therefore disapprove *Wickersham*'s inaccurate assertion that "unreasonable self-defense" is a "defense." (*Wickersham, supra,* 32 Cal.3d at p. 329.) This does not mean, however, that trial courts must instruct sua sponte on unreasonable self-defense in every murder case. Rather, the need to do so arises only when there is substantial evidence[8] that the defendant killed in unreasonable self-defense, not when the evidence is "minimal and insubstantial." (*People* v. *Flannel, supra,* 25 Cal.3d at p. 684.)

IV

Having reaffirmed the soundness of our holding in *Sedeno, supra,* 10 Cal.3d 703, we now determine its applicability here.

Over defendant's objection, the trial court instructed the jury on voluntary manslaughter as a lesser offense included within the charged crime of murder, explaining that if the jury found the existence of one of two circumstances—the killing took place in a sudden quarrel or heat of passion, or defendant acted in the unreasonable but good faith belief that he had to defend himself—it should find that the malice element of murder was not present, and that therefore defendant was guilty not of murder but only of manslaughter. Under the rationale of *Sedeno, supra,* 10 Cal.3d at pages 715-716, this instruction was proper notwithstanding defendant's objection that it was inconsistent with his theory of the case, so long as the record contained substantial evidence from which a jury could reasonably conclude that defendant was not guilty of murder but only of voluntary manslaughter.

■ Defendant contends that the record contains no evidence that the killing occurred during a sudden quarrel or heat of passion. ■ Heat of passion arises when "at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment." (CALJIC No. 8.42 (5th ed. 1995 supp.); see *Wickersham, supra,* 32 Cal.3d at p. 326.)

---

[8]Substantial evidence is evidence sufficient to "deserve consideration by the jury," that is, evidence that a reasonable jury could find persuasive. (*People* v. *Flannel, supra,* 25 Cal.3d at p. 684.)

■ The record contains substantial evidence, some of it offered by the prosecution and some by the defense, from which the jury could reasonably find that defendant intentionally killed Sanchez in a sudden quarrel or heat of passion. Defendant testified that shortly before the killing of Sanchez, his daughter Andrea had come to him, extremely upset, and told him that a man (later identified as victim Sanchez) had threatened her with serious injury by trying to run her car off the road, and that he had spat on the window of her car. When defendant and his daughter confronted Sanchez about his conduct, Sanchez called defendant's daughter a "bitch" and he acted as if he was "berserk." Defendant and Sanchez angrily confronted each other and Sanchez assumed a "fighting stance," challenging defendant. After defendant asked his daughter to call the police, Sanchez started to get into his car; when defendant asked Sanchez where he was going, Sanchez replied, "none of your fucking business," and taunted defendant by saying, "Do you think you can keep me here?" Screaming and swearing, defendant, before firing, ordered Sanchez to "drop the knife" and to get out of his car, threatening to shoot if Sanchez did not do so. This testimony provided substantial evidence from which a reasonable jury could conclude that when defendant killed Sanchez, defendant's reason was obscured by passion to such an extent as would cause an ordinarily reasonable person to act rashly and without reflection, and that defendant thus shot Sanchez in a sudden quarrel or heat of passion.

■ We also reject defendant's contention that the record contains no evidence from which a reasonable jury could conclude that he killed Sanchez in the unreasonable but good faith belief in having to defend himself. Defendant testified that just before the shooting, Sanchez swung at defendant with what appeared to be a knife; that Sanchez ignored defendant's demand to drop the knife; and that Sanchez then made a sudden movement toward defendant, forcing him to step backward, at which time defendant's gun accidentally discharged. Evidence offered by the prosecution, however, suggested that Sanchez was unarmed (no knife was found in his possession, and the folding knife found in Sanchez's car was unopened) and that just before the shooting Sanchez moved away from, rather than toward, defendant. Based on all the evidence, the jury could reasonably conclude that Sanchez was unarmed, but that defendant, his judgment clouded by his anger, unreasonably believed that Sanchez was armed and trying to attack him, and that defendant deliberately fired his gun in response to this perceived threat. Although defendant claimed that the gun discharged accidentally, the jury could reasonably discount this self-serving testimony in light of evidence that (1) defendant repeatedly told Sanchez he would shoot if Sanchez did not drop the knife and get out of the car; (2) the gun had a "medium" pull of more than seven pounds, great enough for the jury to

conclude that an accidental discharge was improbable; and (3) defendant was an experienced marksman who was unlikely to fire a gun accidentally.

■ In maintaining that the trial court should not have instructed the jury on voluntary manslaughter, defendant points out that neither party argued to the jury that the evidence supported a manslaughter conviction. The prosecution argued that the killing was intentional, but not the result of heat of passion or an unreasonable belief in the need for self-defense, and that defendant was therefore guilty of murder, not manslaughter. The defense, on the other hand, argued that the shooting was accidental, and thus that defendant was guilty of neither murder (which requires malice) nor manslaughter (which requires the intent to kill). A trial court's sua sponte duty to instruct on lesser included offenses arises, however, not from the arguments of counsel but from the evidence at trial. "The jury should not be constrained by the fact that the prosecution and defense have chosen to focus on certain theories." (*Wickersham, supra,* 32 Cal.3d at p. 324.) The trial court must instruct on lesser included offenses when there is substantial evidence to support the instruction, regardless of the theories of the case proffered by the parties. Here, as set forth above, the evidence supported an instruction on voluntary manslaughter as a lesser included offense, notwithstanding the arguments of the prosecution and defense.

■ Defendant also argues that the trial court's decision to instruct the jury on the crime of voluntary manslaughter violated his right to due process because he had no previous notice that this crime would be charged against him. He acknowledges that under "normal" circumstances, the indictment or the information places the defendant on notice that the prosecution may seek to establish guilt not only of the crimes specified in the charging document, but also of any lesser offenses included within those crimes. (*People v. Lohbauer* (1981) 29 Cal.3d 364, 369 [173 Cal.Rptr. 453, 627 P.2d 183]; see also § 1159 [trier of fact "may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged . . ."].) Defendant asserts, however, that because the lesser included offense of voluntary manslaughter in this case was "derived through unwanted, inconsistent defense theory instructions," he somehow lacked notice of this crime, and the trial court's instruction on voluntary manslaughter therefore violated due process.

Through the information filed against him, defendant was on notice of the charge brought by the prosecution. The information charged defendant with murder. Because voluntary manslaughter is a lesser offense necessarily included in the crime of murder, the information provided sufficient notice to defendant that the charge against him included the lesser offense of

voluntary manslaughter. (See *People* v. *Toro* (1989) 47 Cal.3d 966, 973 [254 Cal.Rptr. 811, 766 P.2d 577]; *People* v. *Lohbauer*, *supra*, 29 Cal.3d at pp. 368-369; *In re Arthur N.* (1976) 16 Cal.3d 226, 233 [127 Cal.Rptr. 641, 545 P.2d 1345].) Accordingly, the trial court's instruction on voluntary manslaughter did not deprive defendant of his due process right to adequate notice.

CONCLUSION

"[A] defendant has no legitimate interest in compelling the jury to adopt an all or nothing approach to the issue of guilt. Our courts are not gambling halls but forums for the discovery of truth." (*People* v. *St. Martin*, *supra*, 1 Cal.3d at p. 533.) In this case, defendant was prepared to roll the dice in a high stakes game of chance, betting that the jury, faced with the choice of convicting him of murder or acquitting him entirely, would find him not guilty. If successful, this gamble would have served defendant's interests. It would not, however, have served the interests of justice, for it would have denied the jury the chance to consider the possibility, between the extremes of a murder conviction and an acquittal, that defendant was guilty of voluntary manslaughter, a lesser offense included in murder. Instructions that fail to inform the jury of its option to convict the defendant of a lesser included offense shown by the evidence are necessarily incomplete. "Trial courts have a sua sponte duty to instruct regarding lesser included offenses because neither the defendant nor the People have a right to incomplete instructions." (*People* v. *Eilers* (1991) 231 Cal.App.3d 288, 296 [282 Cal.Rptr. 252].) Thus, the trial court in this case properly instructed the jury on voluntary manslaughter, a lesser offense included in the crime of murder with which defendant was charged.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.