Filed 2/28/13  P. v. Cascio CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JIMMY EUGENE CASCIO,<br><br>    Defendant and Appellant. | B236388<br><br>(Los Angeles County<br>Super. Ct. No. KA094538) |

APPEAL from judgments of the Superior Court of Los Angeles County, Geanene Yriarte, Judge.  Affirmed.

Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant Cirilo Castillo.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Lawrence M. Daniels and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jimmy Eugene Cascio was convicted of felony vandalism. (Pen. Code, § 594, subd. (a).)[1] Cascio admitted multiple prior convictions with a prison term (§ 667.5, subd. (b)) and the trial court sentenced Cascio to serve a total of eight years in state prison. On appeal, Cascio argues his felony vandalism conviction must be reversed because the trial court did not instruct sua sponte on misdemeanor vandalism as a lesser included offense. We affirm.

**FACTS**

On June 10, 2011, at about 6:00 p.m., Pomona Police Officer Alan Pucciarelli was driving southbound in the center lane on the 71 Freeway when he noticed Cascio on the shoulder of the northbound side of the freeway by the railroad bridge near the Pomona Boulevard exit. Officer Pucciarelli looked over the center barrier and observed Cascio for three to four minutes while driving in bumper-to-bumper traffic, at approximately 10 feet per minute. The northbound side was "wide open." Cascio was bending over at the waist while holding a bar, prying at something on the ground. Officer Pucciarelli exited at Mission, made a u-turn and approached Cascio's location.

After more officers arrived at the scene, Officer Pucciarelli had Cascio put down the three-foot metal bar and placed him under arrest. Officer Pucciarelli then inspected the area where Cascio had been, and saw a Caltrans electrical box. The concrete top had been removed and there were approximately 12 inches of black wire pulled from it. The next box down was also damaged with a hole on the concrete cover and wires pulled out from it. Black electrical cables had been pulled approximately two to three feet out of the box; a few had been cut.

Robert Diaz, a Caltrans electrical supervisor, responded to the area shortly after 6:00 p.m. Diaz saw two damaged "pull boxes," both with damaged wires. Pull boxes are junction boxes in the ground used to splice wires together. Wires run between boxes in a galvanized pipe connection. For a few years, Caltrans filled pull boxes with expandable foam to prevent copper wire theft but it proved ineffective. Although wire could be

---

[1]     All further section references are to the Penal Code.

pulled from one box, it would be easier to cut the wires from one box and pull it out from another box. Diaz saw cut wires in both boxes at the scene.

The People filed an information charging Cascio with one count of felony vandalism of Caltrans property, "the amount of . . . damage being over $400." At trial in September 2011, the prosecution presented evidence establishing the facts summarized above.[2] Officer Pucciarelli opined that the damage on the concrete top appeared to be recent based on the fact that he could still see concrete dust around the hole which would have been blown away by the wind had it not been a recent occurrence. Diaz estimated that the cost to repair each box was approximately $2,500, the total including replacement cost with a new anti-theft box, pulling of new wire and splices. He had prepared a written estimate for the work that totaled $5,933.14. Diaz expressly testified that Caltrans would not be able to repair the damage to either box for less than $400.[3]

Cascio testified on his own behalf. According to Cascio, he knew the area around the 71 Freeway because he lived under the bridge. He found the metal tool sticking up from the ground, and pulled it out to use it as a cane because he had a hip injury and lived on a steep dirt slope where he could fall down toward the tracks. He denied using the metal tool to pry open or break the boxes and pull the wires from them. Cascio had seen other people pulling wires from these boxes by tying a rope to the wire, attaching the rope to a vehicle, and driving off. Cascio admitted that he was convicted of petty theft in 2003, 2006 and 2007, and theft in 2000, 2003, 2006 and 2007. In argument, Cascio's

---

[2]     During cross-examination, Officer Pucciarelli testified that, while he saw Cascio prying in the area of the box, he did not actually see him prying into the box because the box was below the curb line. Officer Pucciarelli initially testified that he saw Cascio pulling on a black wire from the ground. During cross-examination, he stated that he observed Cascio pulling on something and later concluded that it must have been the electrical wires found near the box.

[3]     During cross-examination, Diaz testified that just replacing the concrete lid of one box would cost less than $100. He also testified that Caltrans replaces pull boxes like those in this case with newer anti-theft boxes when there is either a wire theft or other damage to the original box. The expandable foam can be purchased at a hardware store for "a couple of bucks."

counsel asserted that Officer Pucciarelli did not actually see a theft and Cascio's testimony as to what happened was more reliable. Further, that Diaz's testimony about the amount damages was problematic.[4]

The jury returned a verdict finding Cascio guilty of felony vandalism.

## DISCUSSION

Cascio contends his conviction for felony vandalism, which requires proof that the damage exceeded $400, must be reversed because the trial court did not instruct sua sponte on the lesser included offense of misdemeanor vandalism. We disagree.

### The Governing Law

A trial court is required to instruct sua sponte on a lesser included offense when the evidence warrants such an instruction. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149 (*Breverman*).) The duty to instruct on lesser included offenses exists irrespective of any objection, request, or waiver by either party. (*People v. Prince* (2007) 40 Cal.4th 1179, 1265; *People v. Barton* (1995) 12 Cal.4th 186, 198.) The test for determining when the duty to instruct arises is not an "'*any* evidence, no matter how weak,'" standard. (*People v. Moye* (2009) 47 Cal.4th 537, 553.) Instruction on a lesser included offense is required when a reasonable jury could find that the defendant committed the lesser offense. (*Breverman, supra*, 19 Cal.4th at p. 162.) As a corollary, there is no duty to instruction on a lesser included offense when there is no substantial evidence to support a conviction for the offense. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.)

---

[4]  As Cascio's counsel put it, Diaz came to court disrespectful, chewing gum during his testimony, and presented a disinterested and exaggerated estimate to repair the pull boxes. "He wrote this big memorandum with all these costs, you know, the whole pay one guy to work while the other guys hold up shovels, you know, supervisor to stand there, you know, two CHP officers to stand there for 1300 bucks, [plus] mileage . . . [t]hey get $42. I mean, it's just overblown and ridiculous, and it's not even to repair any damage to these boxes. It's to completely install some other device over the box. So, that's not reasonable and it's not proper and it's not $5000."

In this case, the People presented evidence demonstrating that repair and replacement of the boxes would cost $5,933.14. Exhibit 14, which was admitted at trial indicated the following costs: labor costs for a Caltrans supervisor and four workers $1,856.16; two California Highway Patrol officers for support $1,343.68 and reimbursement for mileage $42; equipment costs, including five vehicles and a compressor $203.04; and materials $2,488.26. Cascio did not present his own evidence in support of an argument that the cost was less than $400. Instead, his trial counsel presented an attack on the prosecution's evidence by way of cross-examination and argument. Trial counsel argued the boxes could be fixed without being replaced by new tamper proof boxes and that the estimated cost of labor was overstated.

Even if we believe the defense theory of the case, there is simply no evidence that the replacement cost for even one of the boxes was less than $400. Perhaps Caltrans could cheaply fix the cement lids on the pull boxes, run new wire through them and spray inexpensive foam into the boxes instead of replacing them with the new anti-theft boxes, as Diaz asserts. Even so, there are still significant labor and safety costs associated with re-installing the boxes on a freeway. The estimate of $5,900 in damages may be high, but we see no substantial evidence supporting an instruction on misdemeanor vandalism based on the theory that the damages were less than $400. Diaz's testimony that he could not repair either one of the damaged boxes for less than $400 was unrefuted.

## DISPOSITION

The judgment is affirmed.

BIGELOW, P. J.

We concur:

FLIER, J.

GRIMES, J.

5