Filed 12/18/13  P. v. Estrada CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057454 |
| v. | (Super.Ct.No. RIF1100789) |
| MATTHEW JOEL ESTRADA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.

Affirmed with directions.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, and

Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant Matthew Joel Estrada stabbed to death his friend, Rene Gonzalez.

Before the killing, defendant had been drinking heavily. A jury convicted defendant of one count of first degree murder (Pen. Code, §§ 187, 189)[1] and found true the allegation that he personally used a deadly weapon in committing murder. (§§ 12202, subd. (b)(1), 1192.7, subd. (c)(23).) The trial court sentenced defendant to an indeterminate term of 25 years to life in prison, plus one year on the personal weapons-use enhancement, for a total indeterminate prison term of 26 years to life.

On appeal, defendant admits he killed Gonzalez but argues he did not act with premeditation and deliberation. He contends the court erred in admitting prior acts of violence and in refusing to give the jury an instruction on the lesser included offense of voluntary manslaughter. We reject these contentions and affirm the judgment.

II

STATEMENT OF FACTS

*Gonzalez's Death*

On March 27, 2011, defendant visited the home of Angel Guzman. Defendant showed Guzman a butcher knife and said he was planning to stab someone because he

---

[1] All statutory references are to the Penal Code unless stated otherwise.

2

was mad about an incident in which his son's dog was run over two or three years earlier. Defendant blamed Albert Torres and his friends for the dog's death. He asked Guzman to be his "back-up."

Later in the evening, around 8:00 or 9:00 p.m., defendant arrived at the Torres house, where Torres and Gonzalez were hanging out and drinking. Initially Torres told defendant that he could not stay because defendant was already drunk, and Torres knew defendant liked to fight. Defendant did not leave but remained at Torres's house where the three men continued to drink. At one point, they drove to defendant's house to get another bottle of liquor. They returned to the Torres home for more drinking.

Defendant returned to Guzman's house, where Guzman said defendant was visibly drunk. Defendant went back to the Torres home and kept drinking in the side yard. Gonzalez asked Torres why defendant was "itching" to fight him. Torres said to ignore defendant because "that's how he is when he's drunk."

Torres was holding his infant son several feet away from Gonzalez and defendant. Torres could not hear their conversation over the loud music. Defendant then stabbed Gonzalez in the back with a knife. Gonzalez appeared "dazed" and tried to swing at defendant but he did not make contact.

Torres removed his son for safety. When he came back outside, defendant was running down the street and Gonzalez was standing, dazed in the yard, until he fell down.

3

After Torres's girlfriend called 911, an ambulance transported Gonzalez to the hospital, where he underwent surgery but eventually died from a stab wound to the chest.

*Defendant's Flight and Arrest*

Defendant sought out his neighbor, Jonathan Solis, and asked to hide in his yard. Defendant told Solis, "I think I killed somebody," and showed him a knife. Solis told defendant to get off of his property, and defendant ran through Solis's back yard and jumped the fence. Defendant dropped a liquor bottle and a steak knife. Defendant was eventually taken to jail.

*Defendant's Admissions*

In recorded telephone calls from jail to family members, defendant admitted that he had "messed up." He also discussed the police search for the knife he used to stab Gonzalez and had shown to Solis, corroborating Solis's testimony that defendant dropped a knife when defendant jumped the fence in Solis's backyard.

*Defendant's Uncharged Assaults*

While in jail, defendant attacked a cellmate and stabbed him with a toothbrush. He continued kicking and punching the cellmate until correctional officers were able to subdue defendant with pepper balls.

On another occasion, after defendant had been drinking, he asked his neighbor, Jose Pinto, to assist him in a fight for revenge. Pinto refused. About 30 minutes later, defendant returned with a bloody gash on his head and asked Pinto to take him to the

4

hospital. Pinto waited several hours for defendant to be treated but finally left defendant to walk home about a mile and a half. Defendant responded by coming to Pinto's house in a rage, throwing a brick at Pinto's car, and cracking defendant's own windshield. Defendant struck Pinto on the side of the head, leaving Pinto "a little incoherent." Pinto's wife and defendant's uncle tried to calm defendant down and eventually called the police.

*Defense*

Defendant did not testify. Instead, he presented stipulations between the parties that (1) an investigator with the prosecutor's office would testify that Guzman told him that defendant was drunk all day on the date he stabbed Gonzalez and that Torres was a member of a gang; (2) that the investigator would testify that Torres's neighbor did not mention hearing loud music coming from the Torres house that night; (3) that Gonzalez's blood alcohol level at the time of his death was .25; (4) that defendant's blood alcohol level at 6:00 a.m. the day after he stabbed Gonzalez was .13; and (5) that, through a process called "retrograde extrapolation," the blood alcohol level decreases at a certain rate over time.

III

EVIDENCE OF UNCHARGED CONDUCT

Defendant contends that the court improperly admitted evidence of the two uncharged assaults on defendant's cellmate and his neighbor. Respondent contends the

5

trial court properly exercised its discretion in allowing the evidence because the uncharged acts were sufficiently similar to the murder and relevant to prove intent and to negate the defense of intoxication. Additionally, the evidence was not unduly prejudicial and any error in admitting it was harmless, given the overwhelming evidence of defendant's guilt. We agree.

In a pretrial hearing, the prosecutor argued the evidence showed defendant intended to use a weapon to inflict great bodily injury or endanger the life of an individual. The prosecutor described each incident as similar unprovoked attacks and probative to establish defendant's intent at the time of the stabbing. Defense counsel argued the incidents were distinguishable and overly prejudicial. The attack in jail was part of the "code of conduct" for incarcerated persons. Similarly, defense counsel argued that the attack on the neighbor with a brick was different because defendant hit the neighbor with the brick only once before he was distracted. The trial court allowed evidence of the two assaults on the cellmate and the neighbor and precluded evidence of a third attack on defendant's stepfather.

"A trial court's decision to admit or exclude evidence is reviewable for abuse of discretion." (*People v. Vieira* (2005) 35 Cal.4th 264, 292; see also *People v. Davis* (2009) 46 Cal.4th 539, 602.) A trial court's exercise of discretion must not be disturbed on appeal except where the court acted in an arbitrary, capricious or patently absurd

6

manner that resulted in a manifest miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

Evidence of uncharged misconduct is admissible "when relevant to prove some material fact other than the defendant's general disposition to commit such an act." (*People v. Jones* (2012) 54 Cal.4th 1, 49.) Evidence Code section 1101, subdivision (b), provides, in relevant part: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).)

In determining whether evidence of uncharged misconduct is admissible, the trial court must look to the similarities between the uncharged misconduct and the charged conduct. The required degree of similarity changes depending on the purpose for which the proponent of the evidence wishes to introduce the uncharged acts: "[E]vidence of a defendant's uncharged misconduct is relevant where the uncharged misconduct and the charged offense are sufficiently similar to support the inference that they are manifestations of a common design or plan. [¶] . . . [¶] The least degree of similarity . . . is required in order to prove intent"—that the defendant probably harbored the same intent in each instance. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 401-402.) The trial court must also decide whether the probative value of the evidence is substantially

7

outweighed by the probability that its admission would (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.  (*Id.* at p. 404, citing Evid. Code, § 352.)  "Prejudicial" is not synonymous with "damaging," but refers instead to evidence that "'"uniquely tends to evoke an emotional bias against defendant"'"" without regard to its relevance on material issues.  [Citations.]"  (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121; see also *People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1105.)

We conclude the evidence of defendant's unprovoked assaults with deadly weapons on two other persons was properly admitted to establish his intent to kill Gonzalez.  The trial court determined that the uncharged assaults were sufficiently similar to Gonzalez's murder to allow the evidence under Evidence Code section 1101, subdivision (b).  The trial court considered the similarities between the stabbing of Gonzalez and defendant's cellmate.  Specifically, the court examined the manner in which defendant attacked both victims, the injuries caused, and the circumstances. Defendant's attack on his cell mate was sufficiently similar to the attack on Gonzalez because it showed that he attacked his victims with a weapon from behind in order to gain an advantage.  After wounding his victims, he proceeded to attack them further. Each attack was severe enough to show an intent to kill.

The trial court concluded that these attacks, although one occurred in jail and another on the streets, were sufficiently similar to allow admission.  The trial court also

concluded that any prejudice from the evidence was outweighed by its probative value under Evidence Code section 352. Noting that it is "hard to ignore the highly, I think, probative value of these acts," and recognizing that many inmates in jail do not physically attack other inmates when they are "disrespected," the trial court found that the probative value of an unprovoked attack against defendant's cell mate outweighed the prejudice, especially given the significant similarities between the two attacks.

The trial court also examined the similarities between defendant's attack on his neighbor and found it was sufficiently similar to the attack on Gonzalez to warrant its admission under Evidence Code section 1101, subdivision (b). When defendant's neighbor left him at the hospital, it took defendant 30 to 45 minutes to walk home and he became so enraged that he hit his neighbor in the head with a brick. This unprovoked attack was sufficiently similar to the unprovoked attack on Gonzalez to warrant its admission to establish defendant's intent to endanger the life of another with a weapon. The trial court then examined the probative nature of the evidence, compared to its prejudicial effect. Defendant's irrational attack on his neighbor outweighed any prejudicial impact.

When instructing the jury, the trial court indicated that any evidence of uncharged acts could be considered only for the limited purpose of determining whether defendant had the intent to kill. The trial court's decision was well within the bounds of reason, and therefore not an abuse of discretion.

9

Even if this court were to conclude that the trial court erred in admitting evidence of defendant's uncharged assaults, any such error was harmless—as it is not reasonably probable that defendant would have received a more favorable result absent the admission of that evidence. (*People v. Welch* (1999) 20 Cal.4th 701, 750.) Defendant does not dispute he stabbed Gonzalez, intending to kill him. After first stabbing Gonzalez in the back, defendant continued to attack, culminating in a fatal stab to the chest. Defendant stabbed Gonzalez with so much force that the tip of the knife bent. Defendant pierced the sternum and continued stabbing to a depth of four to five inches, damaging two separate chambers in Gonzalez's heart and piercing Gonzalez's upper left lung. As defendant acknowledges, "Stabbing the victim in the torso with such force that it penetrates muscle, bone and two vital organs constitutes compelling and virtually irrefutable evidence of intent to kill."

Additional evidence confirmed defendant intended to stab someone that night. Defendant told Guzman he was angry because Torres and his friends had killed his dog a few years before and he wanted retribution. Considering the evidence against defendant, it is not reasonably probable that, absent the evidence of the prior assaults, a different result would have occurred. Thus, any error was harmless. (*People v. Williams* (2009) 170 Cal.App.4th 587, 612.)

Finally, defendant forfeited an objection to the admission of evidence on federal constitutional grounds by failing to raise that objection with the trial court. (*People v.*

10

*Sanders* (1995) 11 Cal.4th 475, 510, fn. 3, citing *People v. Gordon* (1990) 50 Cal.3d 1223, 1264-1265, overruled on other grounds in *People v. Edwards* (1991) 54 Cal.3d 787.) Defendant never asserted any objection based on the Fifth, Sixth or Fourteenth Amendments when opposing the prosecution's motion to admit the evidence. In any event, as discussed above, the trial court did not abuse its discretion in admitting the evidence. Because defendant's due process argument can rest only on the premise that the trial court abused its discretion in admitting the evidence, his claim fails. (*Sanders,* at p. 9.) It is also not reasonably likely defendant would have obtained a more favorable outcome. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) For the same reasons, any error does not rise to the level of prejudice under *Chapman v. California* (1967) 386 U.S. 18, 24.)

IV

VOLUNTARY MANSLAUGHTER

Defendant next asserts the trial court should have instructed the jury on the lesser included offense of voluntary manslaughter. We hold the trial court had no duty to give the instruction but any error in failing to instruct the jury was harmless because the jury was instructed on both first and second degree murder and convicted appellant of first degree murder.

11

We conduct an independent review of instructional error concerning a lesser included offense. (*People v. Avila* (2009) 46 Cal.4th 680, 705.) When discussing jury instructions, the trial court stated:

"We have been discussing jury instructions.

"There were a couple, there were two specifically which the defense has requested, and the Court is inclined to deny that request, specifically it is CALCRIM 570, voluntary manslaughter, heat of passion as a lesser-included offense, as well as 571, voluntary manslaughter, imperfect self-defense as a lesser-included offense.

". . . The Court in reviewing the evidence that was presented in the trial does not believe that there is substantial evidence warranting those instructions be given to the jury.

"The facts which were argued in support of those instructions, . . . was that there was an argument, a verbal argument which took place, I think logically you could conclude between the victim and [defendant], because Mr. Torres said he was taking care of his kid at the time and overheard an argument.

"And I think Mr. Philips also mentioned that there was some—there could have been some injuries to [defendant], although I will tell you that in listening to the evidence, I am not aware of any injuries that would have occurred by way of a fist fight.

12

"In any event, that was all I was provided with, so as to the provocation, heat of passion, I am not aware of any evidence that was presented which would otherwise have provoked [defendant] to the point where he would have acted in the way that he did.

[¶] . . . [¶]

"Again, it is just a verbal argument. If any one of those instructions is even close to being applicable, it would probably be the heat of passion as opposed to self-defense, but even that one there is a big hole and lack of evidence to warrant those instructions."

The court ultimately instructed the jury only on first degree and second degree murder. The jury found defendant guilty of first degree murder.

A trial court must instruct the jury on the general principles of law that are "closely and openly connected with the facts before the court." (*People v. Wickersham* (1982) 32 Cal.3d 307, 323, disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 200-201.) This obligation extends to lesser included offenses if the evidence "'raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense.' [Citations.]" (*People v. Lopez* (1998) 19 Cal.4th 282, 287.) Voluntary manslaughter is a lesser-included offense of murder. (*People v. Booker* (2011) 51 Cal.4th 141, 181.) However, as the trial court decided, the evidence in this case did not justify the giving of an instruction on voluntary manslaughter based on heat of passion or provocation or imperfect self-defense. A court's duty to instruct on lesser included offenses arises only

13

where there is substantial evidence for a jury to evaluate. (*People v. Barton, supra*, 12 Cal.4th at p. 195, fn. 4; *People v. Oropeza* (2007) 151 Cal.App.4th 73, 78.) Speculation is not sufficient evidence. (*People v. Escobar* (1996) 48 Cal.App.4th 999, 1016; *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

Voluntary manslaughter is "the unlawful killing of a human being without malice . . . [¶] . . . upon a sudden quarrel or heat of passion." (§ 192, subd. (a).) An intentional, unlawful homicide caused by sudden quarrel, heat of passion, or provocation is voluntary manslaughter. (*People v. Barton, supra*, 12 Cal.4th at p. 201.) There must be evidence that: (1) the provocation was caused by the victim or the defendant reasonably believed it was caused by the victim, and (2) the provocation was such as to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. (*People v. Moye* (2009) 47 Cal.4th 537, 550; *People v. Lee* (1999) 20 Cal.4th 47, 59.) Similarly in order for a killing to be imperfect self-defense, a defendant must have an actual, but unreasonable, belief of having to act in self-defense. (*People v. Barton, supra*, 12 Cal.4th at pp. 200-201.)

In *People v. Manriquez* (2005) 37 Cal.4th 547, 585-586, the California Supreme Court held that a defendant was not entitled to jury instructions on voluntary manslaughter based on heat of passion or provocation because an average, reasonable person would not shoot someone who taunted him or called him names. (*Ibid.*) In

14

another instance, the same defendant confronted another victim, who had been romantically involved with the defendant's girlfriend, and fatally shot him. A witness told law enforcement officers that, just before the shooting, the victim asked the defendant, "Why are you mad at me?" and "What's your problem with me?"' The defendant shot the victim from a distance of several feet and drove off. (*Id*. at pp. 561-562.) The California Supreme Court held that the defendant was not entitled to an instruction on voluntary manslaughter based on imperfect self-defense because the defendant never indicated that he felt a threat of immediate harm or fear of the victim. (*Id.* at p. 582.) At most, the evidence showed the defendant had a fear of future harm which is insufficient to require an instruction on imperfect self-defense, which requires an actual, but unreasonable, fear of imminent harm. (*Ibid.*)

The evidence here was, likewise, insufficient to require an instruction on the lesser included offense of voluntary manslaughter, either under a theory of heat of passion or imperfect self-defense. There was no evidence defendant feared imminent harm from Gonzalez. Defendant was the unprovoked aggressor, stabbing Gonzalez in the back with the knife. Additionally, any injuries defendant sustained were, by his own admission, caused by jumping and eluding law enforcement—not inflicted by Gonzalez. Defendant had told Guzman earlier in the day that he was planning to stab someone. Finally, defendant fled the scene of the murder, leading police on a chase through the neighborhood. The only mention of self-defense arose in the context of defendant's

15

jailhouse conversation with his stepfather, in which he agreed with the stepfather's comment that he acted in self-defense. The only possible provocation was an argument between him and Gonzalez. But an average, reasonable person would not stab someone based on a verbal dispute. (*People v. Manriquez, supra*, 37 Cal.4th at pp. 585-586.) Defendant maintains the jury reasonably could have inferred that Gonzalez threatened or taunted defendant, justifying an instruction on voluntary manslaughter. (*People v. Berry* (1976) 18 Cal.3d 509, 515.) The evidence simply does not support such a conclusion. The trial court had no duty to instruct on voluntary manslaughter, either under the theory of heat of passion or the theory of imperfect self-defense.

In any event, there could be no prejudice from any error in this case. Error is harmless unless the court finds it is reasonably probable a result more favorable to the defendant would have been reached absent the error. (*People v. Breverman* (1998) 19 Cal.4th 142, 178; *People v. Moye, supra*, 47 Cal.4th at pp. 555-556.) Because the jury found defendant guilty of first degree murder, they necessarily found that he acted with premeditation and deliberation. It is not reasonably probable, therefore, that had the trial court instructed on voluntary manslaughter, the jury's verdict would have been any different: "The jury's verdict finding defendant guilty of the first degree murder of [the victim] implicitly rejected defendant's version of the events, leaving no doubt the jury would have returned the same verdict had it been instructed regarding imperfect self-defense." (*People v. Manriquez, supra*, 37 Cal.4th at p. 582, citing *People v. Lewis*

16

(2001) 25 Cal.4th 610, 646.)  Any error in failing to instruct on voluntary manslaughter was harmless.

V

DISPOSITION

We affirm the judgment.

The abstract of judgment should be corrected to show defendant was sentenced to an indeterminate sentence of 25 years to life on count 1 (first degree murder) along with a one-year sentence on the personal weapons-use enhancement to run consecutively to the sentence on count 1, for a total indeterminate sentence of 26 years to life.  (*People v. Avila* (2013) 212 Cal.App.4th 819, 828, citing *People v. Farell* (2002) 28 Cal.4th 381, 394, fn. 2.)  The trial court should forward the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.

17