Filed 10/30/13  P. v. Sanabria CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARLOS ALBERTO SANABRIA,<br><br>    Defendant and Appellant. | E055042<br><br>(Super.Ct.No. INF066224)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Richard A. Erwood, Judge.  Affirmed.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

Defendant Carlos Alberto Sanabria sexually abused his own daughter over several

1

years. He appeals from the judgment entered following jury convictions for misdemeanor battery, a lesser included offense (Pen. Code, § 242[1]; count 1); aggravated sexual assault of a child, by rape (§ 269, subd. (a)(1); count 5); assault, a lesser included offense (§ 240; counts 6 and 7); and forcible lewd act on a child under 14 (§ 288, subd. (b)(1); count 8). The trial court sentenced defendant to 15 years to life, consecutive to eight years in state prison.

Defendant contends the trial court prejudicially erred in not instructing the jury, as to count 5, on statutory rape as a lesser offense to aggravated sexual assault by rape. Defendant also contends the trial court failed to instruct, as to count 8, on nonforcible lewd act as a lesser included offense of forcible lewd act. We conclude there was no prejudicial instructional error, and affirm the judgment.

## II

## FACTS

J.S.'s biological father, defendant, and biological mother, P.B., separated in around 2003 or 2004, when J.S. was six years old and in the second grade. After her parents separated, J.S.'s parents shared custody of J.S. and her brother, C.S. J.S. lived with defendant until she was 12 years old. J.S. and C.S. stayed with P.B. every other weekend and one month during the summer. Defendant worked in construction often 10 hours a day, Monday through Thursday. He worked out of town but was home on the weekends.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

From second grade through part of fourth grade, J.S. lived with defendant in Indio. Thereafter, she moved with defendant from Indio to La Quinta and lived there through sixth grade. Also living in the home were J.S.'s brother, C.S., defendant's new wife, D.I., her two children, C.I. and A.I., defendant and D.I.'s daughter, K.S., and two uncles, A.S. and Jo.S. In July 2009, J.S. moved in with P.B.

Defendant began touching J.S. when D.I. went to Mexico for a month in 2005, leaving defendant to care for the children. At that time, J.S. was eight years old, starting third grade, and living with defendant, her brother C.S., D.I. and her two children, C.I., and A.I., in a one-bedroom apartment in Indio. J.S. testified that defendant began placing his hand into her underwear and touching her genital area[2] and buttocks. He also touched her breasts. Defendant touched her under and over her clothing. J.S. did not tell anyone because defendant threatened to hit her and not let her see her mother if she told. J.S. knew defendant "hit hard." Defendant had previously beat her with a clothes hanger for fighting with C.S. C.S. and J.S.'s stepbrothers, C.I. and A.I., told her they saw defendant touch her genitalia while J.S. was sleeping. J.S. denied the touching because she wanted to forget it.

J.S. did not recall defendant molesting her during the summer of 2006, between third and fourth grade. J.S. moved to La Quinta with defendant and D.I. about a month after she started fourth grade. J.S. turned 10 years old the following spring of 2007, when

---

[2] Although J.S. used the word "vagina," she probably meant her "genitals." The vagina is an internal organ, defined as "a canal that leads from the uterus of a female mammal to the external orifice of the genital canal." (Webster's 3d New Internat. Dict. (1993) p. 2528.)

she was in fourth grade. After she moved to La Quinta, while in fourth grade, defendant started touching her again in the same places on her body as when she was living in Indio. Defendant started having "relationships" with her when she was 10 years old and in fifth grade. J.S. explained that "relationships" meant having sex. When this happened, defendant would put his fingers or penis in her vagina. One time defendant ejaculated. Defendant put his fingers in her vagina about five times and put his penis in her vagina more than 20 times. J.S. later testified defendant had sex with her between 40 and 50 times, at least once a day, and sometimes twice a day on weekends. It usually happened at night. This continued when she was in middle school. J.S. repeatedly told defendant to stop having sex with her, to no avail.

The first time defendant had oral sex with J.S. was during summer vacation before sixth grade, in 2008, when she was 11 years old. He had oral sex with her more than five times. Defendant also attempted anal sex, but J.S. would not allow it. She also refused to give defendant a "hand job." J.S. did not recall whether defendant tried to get her to copulate him orally.

The last time J.S. had sex with defendant was in July 2009. J.S. was 12 years old and had just completed sixth grade. Count 1 is founded on this sexual act. The incident occurred the same day defendant hit her with a cable earlier in the day, because defendant thought she was having sex with Jo.S. in his room, even though she did not. Defendant hit her because he thought she was lying when she denied it. J.S. slept in Jo.S.'s room because she wanted to avoid being molested by defendant. Around 5:00 a.m., she heard defendant go to her room looking for her. Because J.S. was afraid of defendant and

4

feared that he would find her and hit her, she climbed through Jo.S.'s window. As J.S. reentered the house, defendant saw her and told her to go to her room. When they were in her room, he hit her back with a cable. The cable was from an electronic box. J.S. and Jo.S. both told defendant they had not had sex when she was in Jo.S.'s room. Defendant hit J.S. with the cable again on her back and cheek, because he did not believe J.S. Because J.S. did not want defendant to hit her again, she finally told him she had had "relationships" with Jo.S. Defendant then confronted Jo.S., accused him of having sex with J.S., and kicked him out of the house. Later, Jo.S. asked J.S. why she had lied to defendant. J.S. told Jo.S. she lied because she wanted defendant to stop hitting her with the cable.

Afterwards, on the same day, J.S. went to her room. Defendant told her to take care of J.S.'s little sister, K.S., who was about one year old. An hour later, defendant entered her room, locked the door, grabbed J.S., and started touching her as she was starting to fall asleep. K.S. was in the room, watching TV and walking around. This was the last time defendant had sex with her. It happened around 7:00 or 8:00 a.m. J.S. testified that defendant forced her to have sex with him in his bedroom. He penetrated J.S.'s vagina with his penis. J.S. did not scream because defendant threatened to hit her. J.S. knew he would hit her hard and was scared. The only times defendant had hit her were that day and when she had fought with her brother, C.S.

J.S. did not tell anyone about the incident because defendant threatened to hit her, she was scared of him, and he had told her he would not let her see her mother. He also told her he would give her things if she did not tell. It was not until four or five days after

5

the last incident that J.S. told someone defendant had molested her. J.S. noted that she had mentioned once, in D.I.'s presence, that defendant had given her a hickey. J.S. first told her Aunt J., and then her mother, that defendant had molested her. Thereafter, J.S. remained in her mother's home. P.B. testified that J.S. told her that after defendant hit her with a cable, he touched her all over her body, and "raped" her that same day. J.S. told P.B. that defendant hit her with the cable because she would not take her clothes off, she would not let him touch her, and he had found her in Jo.S.'s room.

On July 29, 2009, the same evening J.S. told P.B. about the incident, P.B. and J.S. confronted defendant with J.S.'s accusations. P.B. told J.S. to tell defendant what she had said defendant had done to her. J.S. stated in defendant's presence that he had raped her three times during the same day defendant had hit her with a cable. Defendant did not say anything in response, other than ask for forgiveness. He then left. About 45 minutes later P.B. contacted law enforcement. Defendant disappeared, was reported missing, and was ultimately located and arrested in Los Angeles.

Sheriff's Detective Gaunt and Sergeant Zamora interviewed defendant on September 28, 2009. Defendant admitted he had touched and hit J.S. Defendant said that, when he found J.S. sneaking out of Jo.S.'s bedroom window, he suspected J.S. and Jo.S. had had sex. J.S. was not wearing underwear. Defendant admitted touching her vagina but said he did it to see if it was wet, which he thought would indicate whether she had had sex with Jo.S. Defendant conceded he could not tell this from touching her. He then hit J.S. with a cable.

6

Defendant added that "one time," when he was drunk and "really [didn't] know what happened," he might have woken up in J.S.'s bed. J.S. was in bed with him and he was naked and had ejaculated. He believed he had had vaginal intercourse with J.S. She was about 11 years old. Defendant said he had intercourse with J.S. only once, and described the incident in detail. He admitted touching her breasts and kissing her on the mouth. Defendant told J.S. that what they were doing was wrong. Defendant apologized to J.S. and asked for forgiveness. During his police interview, defendant said that he had wanted to kill himself "just thinking about it" and added, "God will not forgive me for this." Defendant denied he had committed any other sexual acts with J.S.

J.S.'s police interview statements differed from her trial testimony. During her interviews, she did not say defendant touched her buttocks or that her stepbrothers said they saw defendant touch her. She also did not mention digital penetration, oral copulation or that defendant wore a condom.

Defendant's nephew, M.S., testified that two weeks after defendant was arrested Jo.S. told him he loved J.S., he had "relations" with J.S. a week before she accused defendant, and Jo.S. planned to marry J.S. M.S. also testified J.S. told him defendant had sexually abused her.

When Jo.S. was interviewed, he stated that J.S. spent time in his room watching movies because she felt comfortable there and did not feel secure in her room. She never told him defendant had sexually abused her. Jo.S. stated that he did not believe defendant had had any physical contact with J.S.

7

J.S. was interviewed by Sarah Walker on July 31, 2009, and August 11, 2009, at the Barbara Sinatra Children's Center. J.S. also met with registered nurse Deborah McMahon, who performed a sexual assault exam on J.S. on August 4, 2009. McMahon found clefts on J.S.'s hymen. The condition of J.S.'s hymen was consistent with a history of sexual abuse. J.S.'s hymen was normal for a child who was sexually active. It was not normal for a child who was not. McMahon highly suspected J.S. had been sexually abused.

Dr. Tang, with whom McMahon worked, disagreed that J.S.'s hymen was not normal. Dr. Tang believed the extra material in the hymen was a "skin tag," which was normal, and the clefts should not be considered evidence of sexual abuse. The clefts could be congenital or acquired.

Dr. Ticson, a pediatrician with a subspecialty in child abuse, also testified that J.S.'s hymen looked normal. Ticson agreed that this might be because defendant and J.S. had engaged in "simulated sex," in which the penis does not fully penetrate the vagina. It was also possible for there to be vaginal penetration in a child without hymen trauma if it occurred only a few times.

Forensic physician, Dr. Horowitz testified that J.S.'s hymen exam results appeared to be normal. She went on to explain that an exam is considered abnormal only when there is a complete separation in the hymen that does not heal back to normal. The normal finding, despite irregularities, is because there are often many irregularities in the hymen and everyone is different. A normal exam does not mean there has been no trauma. It just means there has not been apparent trauma to the extent that it is certain

8

that an abnormality in the hymen is a result of trauma and not a normal variation. In the overwhelming majority of child sexual abuse cases, exams are normal and there is no sign that a child has sustained physical injury because the injury has healed or the abuse has been in such a way that there is no apparent injury. The abuse can feel like something went inside the child's body when the hymen actually has not been penetrated.

III

## INSTRUCTION ON UNLAWFUL INTERCOURSE WITH A MINOR

Defendant contends the trial court erred in not instructing the jury sua sponte on the crime of unlawful sexual intercourse with a minor in violation of section 261.5, subdivision (c) (statutory rape), a lesser included offense of the charged offense in count 5 of aggravated sexual assault of a child by forcible rape in violation of section 269, subdivision (a)(1). The primary difference between the charged offense and statutory rape is that the charged offense requires proof of forcible rape, accomplished by means of "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).)

Count 5 of the second amended information alleges that around September 2008, defendant violated section 269, subdivision (a)(1), by willfully and unlawfully committing forcible rape in violation of section 261, subdivision (a)(2), upon J.S., a child who was under 14 years of age and 10 or more years younger than defendant.

During the hearing on jury instructions, defense counsel requested CALCRIM No. 1070, an instruction on statutory rape (§ 261.5) as a lesser included offense of count 5. Section 261.5, subdivision (c), defines statutory rape as follows: "[a]ny person who

9

engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony." The trial court stated it rejected CALCRIM No. 1070 on statutory rape because statutory rape was not listed as a mandatory lesser included offense in the instructions. Defense counsel agreed, noting it was "more of a lesser related."

The court gave a modified version of CALCRIM No. 1123, on aggravated sexual assault of a child under 14 years, by forcible rape. The instruction stated in part that "[i]t is alleged that [c]ount 5 occurred on or about September 2008." The trial court also granted defendant's request for instructions on simple assault and simple battery, as lesser included offenses of count 5. In addition, a unanimity instruction (CALCRIM No. 3501) was given, instructing the jury to choose one of several different factual scenarios for count 5.

A defendant may be convicted of an uncharged crime if, but only if, the uncharged crime is necessarily included in the charged crime. The reason is constitutionally based. Due process requires that an accused be advised of the charges against the accused in order that the accused may have a reasonable opportunity to prepare and present a defense and not be taken by surprise by evidence offered at trial. The required notice is provided as to any lesser offense that is necessarily committed when the charged offense is committed. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.)

In *People v. Lopez* (1998) 19 Cal.4th 282 (*Lopez*), our Supreme Court stated, "[a] court must instruct sua sponte on general principles of law that are closely and openly connected with the facts presented at trial. [Citations.] This sua sponte obligation

10

extends to lesser included offenses if the evidence '*raises a question as to whether all of the elements* of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense. [Citations.]' [Citations.] As we stated recently, 'A criminal defendant is entitled to an instruction on a lesser included offense only if [citation] "there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from *guilt* of the greater offense" [citation] *but not the lesser*. [Citations].' [Citation.]" (*Id.* at pp. 287-288; italics added.)

Two tests are used to determine whether a lesser offense is necessarily included in the charged offense: the elements test and the accusatory pleading test. "The elements test is satisfied when ' "all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense." [Citation.]' [Citations.] Stated differently, if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former. [Citations.] [¶] Under the accusatory pleading test, a lesser offense is included within the greater charged offense ' "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." [Citation.]' [Citations.]" (*Lopez, supra,* 19 Cal.4th at pp. 288-289.)

Defendant argues the trial court erred in refusing to instruct on the lesser included offense of statutory rape under the accusatory pleading test. The facts as alleged in the accusatory pleading do not support a finding of aggravated sexual assault based on forcible rape without also a finding of statutory rape. Therefore, a violation of statutory

11

rape under section 261.5, which also requires "unlawful sexual intercourse with a minor" (§ 261.5, subd. (c)), is a lesser included offense of count 5, as effectively alleged in the accusatory pleading.

The People do not dispute that under the accusatory pleading test, statutory rape is a lesser included offense of aggravated sexual assault by forcible rape. Rather, the People argue there was insufficient evidence to support instruction on statutory rape because there was no substantial evidence that defendant committed statutory rape but not forcible rape.

Defendant argues there was substantial evidence based on defendant's recorded police interview statement in which he admitted having sexual intercourse with J.S. on one occasion, but claimed he did not use any force, violence, duress, menace, or threat of immediate and unlawful bodily injury. Rather, J.S. was a willing participant. Sergeant Zamora testified that during defendant's statement describing when he had sex with J.S., defendant did not say he used any force on J.S. Defendant stated that during the incident, he kissed J.S. on the mouth. She kissed him, threw herself on top of him, straddled him, and sat on him. Defendant and J.S. continued kissing. Defendant put his hands on J.S.'s waist. His penis went inside her, and he ejaculated. J.S. bled from the intercourse. Defendant told J.S. that what they were doing was wrong, told her to forgive him, and said he was the "guilty one." J.S. said nothing and climbed off defendant. J.S. was crying "because it happened." Defendant again asked for her forgiveness.

The People argue this evidence was insufficient to support instruction on statutory rape because there was unrefuted substantial evidence that over the course of several

12

years, defendant sexually abused J.S. by means of force, violence, threats, and fear of immediate and unlawful bodily injury. We agree. There was evidence that defendant had used corporal punishment on J.S. to intimidate and control her, including hitting her "hard" with his hand and a cable. J.S. testified she did not tell anyone about the abuse for many years because she was "scared." She did not resist because defendant was too strong. When she told defendant to "stop," he hit her and forced off her underwear. J.S. testified defendant had sex with her about 40 times.

We conclude it was unrefuted that defendant's sexual intercourse with J.S. was the result of force, violence and threat of bodily harm, regardless of whether on the particular occasion described by defendant, J.S. kissed defendant and "threw" herself on top of him, as he claims. The act was preceded by years of defendant using violence, force, threats, and fear of immediate and unlawful bodily injury to mold J.S. into a compliant victim. Contrary to defendant's contention that J.S. was a willing participant, the evidence established J.S.'s conduct was purely compelled by defendant's past use of physical, sexual, and emotional abuse, including the use of corporal punishment to control and intimidate J.S. When J.S. acquiesced to defendant's sexual abuse, she did so out of fear, to avoid defendant harming her further through the use of violence and force. It was unrefuted that J.S. resisted and objected to defendant sexually abusing her and, when she did so, defendant used physical violence against her and threatened her. J.S. in no way acted willingly, as reflected by defendant's statement that, after completing sexual intercourse with J.S., she cried and defendant apologized.

13

Moreover, even assuming the court erred by failing to instruct the jury on statutory rape as a lesser-included offense, the error was harmless. The failure to instruct a jury on a lesser-included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instruction adversely to defendant under other properly given instructions. (*People v. Lewis* (2001) 25 Cal.4th 610, 646.) Here, it is not reasonably likely that the absence of instruction on statutory rape as a lesser included offense would have resulted in a different outcome. (*People v. Breverman* (1998) 19 Cal.4th 142, 165 (*Breverman*); *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) There was overwhelming evidence that defendant committed numerous acts of sexual intercourse with J.S., as well as many other forms of sexual abuse, over the course of several years, and performed such acts by use of force, violence, and threats, despite J.S.'s apparent objections and resistance. J.S. may have been compliant during the incident defendant described because he had repeatedly hit her with a cable earlier in the day and she had been beaten into submission over several years of sexual abuse. Given the strong evidence defendant repeatedly used force, violence, and threats to abuse J.S. sexually, it was not reasonably probable the jury would have returned a different verdict had the court instructed on statutory rape as a lesser included offense of aggravated sexual assault by forcible rape.

IV

INSTRUCTION ON COMMITTING A LEWD ACT ON A CHILD

Defendant contends the trial court erred in failing to instruct the jury sua sponte on the crime of committing a lewd act on a child (§ 288, subd. (a)), as a lesser included

14

offense to count 8, forcible lewd act on a child under 14 (§ 288, subd. (b)(1)). Defendant did not request instruction on the crime of nonforcible lewd act as a lesser included offense to count 8.**3**

As discussed in the preceding section, when evidence supporting a lesser included offense is minimal and insubstantial, there is no duty to instruct on the lesser included offense. (*People v. Barton* (1995) 12 Cal.4th 186, 196, fn. 5; *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12.) Defendant argues his recorded statement to the police provided substantial evidence to support instruction on nonforcible lewd act. Defendant stated the only time he committed any sexual touching of J.S. was during the single act of sexual intercourse with J.S., which defendant described during his police interview. According to defendant, during the incident, he touched J.S.'s breasts when she sat on top of him. Defendant argues that, when he described his conduct, he did not indicate he used any force, violence, duress, menace, or fear of immediate and unlawful bodily injury. But defendant acknowledged that the act he described occurred after he had repeatedly hit J.S. with a cable earlier in the day because she denied having sex with Jo.S. Defendant did not stop beating her until she finally said she had had sex with Jo.S., which J.S. conceded in order to stop the beatings.

The People do not dispute that the crime of nonforcible lewd act on a child is a lesser included offense of forcible lewd act on a child. Rather, the People argue there was insufficient evidence to support instruction on nonforcible lewd act because there

---

**3** Defendant requested the instruction as to count 9, and the court rejected this request.

was no substantial evidence that defendant committed lewd acts without violence, duress, menace, or fear of immediate and unlawful bodily injury.

Count 8 of the second amended information alleges that around August 2008, defendant violated section 288, subdivision (b)(1), by willfully, unlawfully and lewdly committing a lewd and lascivious act upon and with the body of J.S. by use of force, violence, duress, menace, and fear of immediate and unlawful bodily injury, with the intent of arousing, appealing to, and gratifying the lust, passions, and sexual desires of defendant and J.S.

As we concluded above regarding the lesser included offense of statutory rape, there was no substantial evidence that would support a reasonable finding that defendant was guilty of only the lesser offense of nonforcible lewd act. There was little, if any, evidence defendant's sexual abuse of J.S. was nonforcible. The evidence as a whole showed that during the course of defendant sexually abusing J.S. from around 2005 through July 2009, defendant repeatedly committed lewd acts upon J.S. and raped her using force, violence, duress, menace, and fear of immediate and unlawful bodily injury. Defendant used corporal punishment and physical violence against her to control and intimidate her into submission and compliance. Defendant hit her with a clothes hanger, beat her with a cable, hit her "hard" with his hand, and threatened not to let her see her mother. Contrary to defendant's contention that J.S. was a willing participant, the evidence established that J.S.'s participation was compelled by her determination to avoid harm.

16

Furthermore, it is not reasonably likely that the absence of instruction on nonforcible lewd act as a lesser included offense would have resulted in a different outcome. (*Breverman, supra,* 19 Cal.4th at p. 165; *Watson, supra,* 46 Cal.2d at p. 836.) There was overwhelming evidence that defendant committed numerous unlawful sexual acts with J.S. over the course of five years, and performed such lewd acts, despite J.S.'s apparent objections and resistance, by use of force, violence, and threats. J.S. was compliant because she had been beaten into submission over years of forcible sexual abuse. Given the strong evidence defendant repeatedly used force, violence, and threats to abuse J.S. sexually, it is not reasonably probable the jury would have returned a more favorable verdict had the court instructed on nonforcible lewd act as a lesser included offense of forcible lewd acts.

V

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

RICHLI
J.

17