Filed 3/25/14  P. v. Boyles CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064062 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS257180) |
| JESSICA RACHEL BOYLES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Edward P. Allard III, Judge.  Affirmed.

Theresa O. Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Attorney General, William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury found Jessica Rachel Boyles guilty of robbery (Pen. Code, § 211)[1] and found true an allegation the crime occurred in an inhabited dwelling (§ 212.5, subd. (a)). Boyles admitted having a prior prison commitment conviction (§ 667.5, subd. (b)) and being released on bail when she committed the offense (§ 12022.1, subd. (b).) The trial court sentenced her to an aggregate term of seven years in prison.[2]

Boyles appeals, contending the court prejudicially erred by excluding evidence of the victim's prior drug use and drug-related convictions and by failing to instruct the jury on grand theft as a lesser included offense of robbery. We are not persuaded by these contentions and affirm the judgment.

BACKGROUND

*Prosecution Evidence*

Early one morning, Boyles and three men knocked on the door of Michelle Herron's home. When Herron opened the door, they rushed inside. Herron did not know them and had never seen them before. They told Herron to go into her bedroom, which she did. One of the men demanded Herron's cell phone and Boyles demanded the rings on Herron's fingers. Herron initially refused the demands and one of the men punched her in the jaw with his fist. Herron turned her head toward the man and saw he held a

---

[1]    Further statutory references are to the Penal Code unless otherwise stated.

[2]    In a separate case, Boyles pleaded guilty to possession of a firearm by a person in possession of a controlled substance (Health & Saf. Code, § 11370.1, subd. (a)). The court sentenced her to a consecutive one-year term for this offense.

hammer. Afraid he would hit her with it, Herron took off her rings and gave them to Boyles. Boyles then told Herron to keep her head down, face the wall, and look away from them. Herron complied.

Herron heard them going through her closet, taking things out, and tearing things up. They also asked her for her laptop. Then, the man who held the hammer told her to go into the bathroom, sit down in the bathtub, face the wall, and keep her head down. After asking her where she kept her pills, he threw a blanket over her head.

When the activity in her home started quieting down, Herron took off the blanket and looked out the bathroom window. She heard some of the intruders talking outside, but she also heard someone in her living room. After waiting and listening for a little while, she heard more people outside. She got up and started creeping through her home checking to make sure no one was there. Once she determined the intruders had left, she locked the door and looked out the window. She saw a tan or gold car and a black truck. Boyles was standing next to the car. She had Herron's coat and purse. Herron's oversize teddy bear and her pink dance pole were in the back of the truck.

After both vehicles left, Herron ran to her neighbor's home. She was crying and unfocused. The neighbor called 911 for her. Less than five minutes before she came over, the neighbor saw the gold car and a black truck parked nearby. Because he had never seen the vehicles before and there had been vandalism and car break-ins in the area, he wrote down the vehicles' license plate numbers. He gave the numbers to the 911 dispatcher.

3

A sheriff's deputy responded to the 911 call. Herron, who was very scared and flustered, told the deputy she had been punched in the jaw. She also said she did not know the intruders. The deputy spent most of the day with Herron and did not observe Herron to be under the influence of alcohol or a narcotic. Additionally, there were no drugs or narcotic paraphernalia in Herron's apartment.

When the investigating officer arrived, he found Herron to be unfocused, excited and upset. However, she did not appear to him to be under the influence of drugs or alcohol.

Herron's apartment was ransacked. Her things were scattered and her mattress was pulled off her bed. The contents of her closet were dumped on the floor. Her kitchen cabinets were left open and items were left out on the counter.

A dispatcher located the addresses of the registered owners of the car and the truck. Two deputies went to the address of the truck's owner. As the deputies neared the address, they saw the car leaving the address and approached it. The car stopped and a man jumped out of the rear seat and ran away. One of the deputies pursued the man, but did not apprehend him.

Meanwhile, the other deputy detained Boyles and another woman who were also in the car. Boyles fit the description of one of the robbery suspects. Deputies found some of Herron's property in the car, including a leather jacket, clothing, a cell phone and a purse. A deputy took Herron to a curbside lineup and Herron identified Boyles as one of the intruders.

4

The investigating officer searched the house of the truck's owner. The officer found Herron's dance pole inside the house and most of the rest of her property in the garage, including her two television sets and a teddy bear. He also found a hammer in the garage, the head and handle of which were both wrapped in black electrical tape.

Herron never gave Boyles or anyone else permission to remove things from her apartment. Herron denied being under the influence of a controlled substance when the robbery occurred and denied using methamphetamine with Boyles before the robbery. She also denied allowing Boyles and the others to take her property to pay a drug debt.

Herron was convicted of receiving stolen property in 1993. She was convicted of facilitating the sale of a controlled substance in 2008.

*Defense Evidence*

Boyles testified she sold methamphetamine in the area where Herron lived. She had known Herron for four or five weeks before the incident and smoked methamphetamine with her. Boyles and several other people frequently went to Herron's apartment at all hours to buy, use and sell methamphetamine.

Boyles went to Herron's apartment the evening before the robbery. Herron and a person known as "Grizzly" were there smoking methamphetamine. After 30 to 60 minutes, Boyles left briefly. When she returned, Herron asked her to get some more methamphetamine. Boyles agreed even though Herron had not yet paid Boyles for the last bundle. Boyles had been providing Herron methamphetamine on credit since they met.

5

Boyles lost track of how much Herron owed her and Boyles was $1,200 in debt to her supplier. When the supplier informed her of the debt, Boyles went back to Herron's home with some friends. Herron and Grizzly were still smoking methamphetamine when Boyles arrived.

After they all smoked some methamphetamine, Boyles asked to speak with Herron privately. They went into the bedroom and closed the door. Boyles put more methamphetamine in Herron's pipe and gave it to Herron to smoke. As Herron smoked, Boyles told Herron about the $1,200 debt. Herron became stressed out because Boyles was stressed out. Herron told Boyles she had no money, but said Boyles could take her property to sell at the swap meet. Boyles kept filling Herron's pipe with methamphetamine throughout the conversation. Boyles sorted through Herron's closet to find items to sell, leaving the items Herron wanted to keep. Herron wanted to keep the dance pole, but Boyles talked her out of it because Boyles wanted it for herself.

Boyles denied taking anything forcibly from Herron's home. She also denied directing anyone to forcibly take anything from Herron's home. Although she brought friends with her to Herron's home, their presence was coincidental. She did not bring them to help her take Herron's property. However, she acknowledged her friends may have independently stolen items for themselves because "they have dope fiend habits," but she denied knowing of or aiding their actions.

After her arrest, Boyles told sheriff's detectives she had never met Herron and had never been to her home before the incident. At trial, she claimed she lied to the detectives because she did not want to get in trouble for selling methamphetamine. She

6

told the detectives she went to Herron's home with Grizzly and a person known as "Heist" and they all used methamphetamine there. She left for awhile and then went back to Herron's home. Two other men were there along with Heist. The men were carrying property out of the apartment. Boyles never went into the apartment while the men were carrying out the property. She denied taking anything from the apartment, but said Heist gave her some rings and other jewelry from the apartment.

Boyles admitted having two prior felony theft convictions. She had a 2008 conviction for vehicle theft and a 2006 conviction for commercial burglary.

## DISCUSSION

### I

### *Prior Convictions/Bad Act Evidence*

### A

### 1

Herron had numerous prior convictions, including a 1993 felony conviction for receiving stolen property, a 2007 misdemeanor conviction for being under the influence of a controlled substance in a public place, a 2007 misdemeanor conviction for being under the influence of a controlled substance, a 2008 misdemeanor conviction for possession of narcotics paraphernalia, two 2008 felony convictions for possession of a controlled substance, a 2008 felony conviction for facilitating the sale of a controlled substance, and two 2009 felony convictions for possession of a controlled substance.

Boyles filed a pretrial motion for authorization under Evidence Code section 788 to impeach Herron with evidence of her prior felony convictions and her prior

7

misdemeanor convictions involving moral turpitude. The court granted the motion as to Herron's prior 1993 conviction for receiving stolen property and prior 2008 conviction for facilitating the sale of a controlled substance.

At the preliminary hearing, a codefendant's counsel asked Herron whether she had a prior felony conviction. Herron responded, "Yes. I took a case for somebody." Counsel clarified, "And that is for sales of a controlled substance?" Herron responded, "I have no sales." Counsel asked, "What do you believe the charge to be?" Herron responded, "I have no sales charge." Counsel again asked, "What do you believe the felony charge is?" Herron responded, "The felony charge? I have no sales charge. The charge was when—for having paraphernalia in my house, and that was the last time I went to jail, and it wasn't mine. It was my boyfriend's, who was gone overseas at the time."

At trial, during the prosecutor's direct examination, Herron admitted having a conviction for facilitating drug sales. During defense counsel's cross-examination, after Herron testified she had not done drugs "in a long while," defense counsel asked whether she had "a felony conviction for sales-related drug charges in 2008" and she replied, "Yes." Defense counsel clarified, "Today you are admitting to a sales charge?" Herron responded, "I wasn't convicted. . . . I went to jail for it but I wasn't convicted of guilty." Defense counsel then showed her the plea agreement for her facilitation conviction and asked her whether she had testified at the preliminary hearing she did not have a drug sales-related case, but instead took a case for her boyfriend. Herron explained to defense counsel he was asking about two different cases.

8

The court subsequently precluded defense counsel from asking further questions about Herron's preliminary hearing testimony. The court explained, "[T]he issue is whether as to [the facilitation] conviction she admits it or not, because it appears, and it's clearly understandable, she has multiple convictions. And I do not believe at the prelim any documents were shown to her. [¶] And so, I mean, now she is saying there is another case, okay, not this case. . . . . [¶] . . . [defense counsel] asked her about [the facilitation conviction and] she said yeah, I suffered this conviction. No, I never denied this conviction. [¶] That's it. End of story. Because it appears as if she thought you were asking her about something else at the prelim which wouldn't surprise me if it was something else because the fact of those numerous priors that she had."

When defense counsel pointed out Herron did not have another sales-related case, the court noted Herron was charged with and admitted to facilitating, or aiding and abetting, a sale. Consequently, the court determined her denial of a sales conviction was not necessarily a denial of the facilitation conviction.

Defense counsel then moved to have the complaint and plea agreement from the facilitation conviction received into evidence. The prosecutor objected and the court sustained the objection, indicating the documents contained a lot of prejudicial information and Herron did not deny the conviction. The court also declined to take judicial notice of the documents. Nonetheless, the court pointed out defense counsel could accomplish his same objective by showing Herron the complaint and asking her "isn't it fact you . . . were charged with X and then you entered a plea to guilty to Count 1.

9

Yes. That's your signature. [¶] Once again she is going to be admitting now everything that's there." Defense counsel did not follow up with such questioning.

2

Boyles contends the court erred in excluding the complaint and plea agreement from Herron's facilitation conviction. She contends the documents were admissible because Herron attempted to mislead the jury or minimize the facts of her facilitation conviction.

"On appeal, we review the trial court's rulings on the admissibility of evidence for abuse of discretion." (*People v. Scott* (2011) 52 Cal.4th 452, 491.) Boyles has not established such abuse because the record does not support her factual assertions. Rather, the record shows Herron readily admitted the facilitation conviction. The record also shows her remarks about having taken a case for her boyfriend were referring to a different conviction. As the court noted, any confusion on this point was attributable to the number of convictions Herron had and the generic manner of questioning at the preliminary hearing. As the court also noted, since Herron's facilitation conviction involved aider and abettor conduct, her denial of having a sales conviction was not inconsistent with her admission to the facilitation conviction.

B

1

Boyles also sought pretrial authorization to admit evidence of Herron's drug related convictions and underlying drug use under Evidence Code section 1103, subdivision (a)(1). In particular, Boyles sought authorization to admit evidence that in at

10

least once instance Herron was caught on tape dropping a $20 bill with a bindle of methamphetamine and then, when questioned by police, denied doing drugs. Boyles argued the evidence was relevant to show Herron was willing to lie about her drug use, which supported Boyles's contention Herron was lying when Herron claimed she no longer used drugs, was not using drugs on the date of the robbery, and did not know Boyles. Boyles further argued the evidence was relevant to show Herron had a history of losing control of herself while under the influence of drugs and lost control of herself on the date of the incident "by getting high on meth, by racking up a drug debt and by agreeing to pay for that drug debt with sales of her personal property." The court denied the motion under Evidence Code section 352.

2

Boyles contends we must reverse her conviction because the court prejudicially erred by excluding evidence of Herron's prior drug convictions and drug use. We conclude Boyles has not established error or prejudice.

In a criminal action, evidence of a victim's character or character trait is not inadmissible if the evidence is offered by the defendant to prove the victim acted in conformity with the character or character trait. (Evid. Code, § 1103, subd. (a)(1).) However, a court may exclude the evidence under Evidence Code section 352 if its admission would confuse the issues at trial or unduly consume time, or if the evidence is more prejudicial than probative. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 827-828.) We will not disturb a court's exercise of its discretion to exclude the evidence " '*except* on

a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Id*. at p. 828.)

Here, the record shows Herron's past convictions for drug use or possession occurred three or more years before the robbery. The convictions, therefore, had little to no tendency to prove Herron was using drugs with Boyles at the time of the robbery. In addition, to the extent Boyles wanted to reach behind one or more of the convictions to show Herron had previously lied about using drugs, the court reasonably found such efforts would have unduly consumed trial time since the trial was otherwise brief, with the presentation of evidence lasting only two days. Accordingly, Boyles has not shown the court's decision to exclude the evidence was arbitrary, capricious or patently absurd.

Boyles also has not shown the court's decision resulted in a miscarriage of justice. The jury knew Herron had been a drug user and had a prior conviction for facilitating drug sales because Herron admitted these facts. The jury also knew it could consider Herron's facilitation conviction in assessing her credibility because the court so instructed. While there was strong evidence corroborating Herron's version of events, including her demeanor after the robbery and the ransacked state of her apartment, there was no evidence corroborating Boyles's version of events. Of particular note, there were no drugs or drug paraphernalia found in Herron's apartment and neither of the two law enforcement officers who spent time with Herron immediately after the robbery detected signs of recent drug use by her. Consequently, Boyles has not established admission of the evidence would have resulted in a more favorable verdict. (*People v. Gutierrez*, *supra*, 45 Cal.4th at p. 828; *People v. Watson* (1956) 46 Cal.2d 818, 837.)

12

## II

### *Grand Theft Instruction*

Boyles requested the court instruct the jury on grand theft as a lesser included offense of robbery. The court declined to give the instruction in part because it found there was insufficient evidence to support it. Boyles contends we must reverse her conviction because the court's decision was prejudicial error. We disagree.

"The legal principles governing our analysis are settled. 'In criminal cases, even absent a request, a trial court must instruct on the general principles of law relevant to the issues the evidence raises. [Citation.] " 'That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]' " [Citation.] "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.]" ' [Citations.] In this regard, the testimony of a single witness, including that of a defendant, may suffice to require lesser included offense instructions. [Citation.] Courts must assess sufficiency of the evidence without evaluating the credibility of witnesses, for that is a task reserved for the jury. [Citation.] The failure to instruct on a lesser included offense in a noncapital case does not require reversal 'unless an examination of the entire record establishes a reasonable probability that the error affected the outcome.' " (*People v. Wyatt* (2012) 55 Cal.4th 694, 698-699.)

13

In this case, the jury was presented with evidence of two incompatible scenarios: one in which Herron voluntarily relinquished her property to Boyles to pay off a mutual drug debt, and one in which Boyles and her accomplices forcibly took Herron's property. Under the first scenario, Boyles was not guilty of any crime because consent is a defense to theft crimes. (*People v. Davis* (1998) 19 Cal.4th 301, 304-305 [no theft occurs where owner freely and unconditionally consents to the taking].) Under the second scenario, Boyles was guilty of robbery because the theft of Herron's property involved the use of force or fear. (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1256 [the elements of robbery and theft are the same, except robbery includes the element of force or fear].) A court has no duty to instruct on a lesser offense when, as here, there is no substantial evidence a defendant committed the lesser offense without also committing the greater offense. (*People v. Smith* (2013) 57 Cal.4th 232, 236, 245; see also *People v. Barton* (1995) 12 Cal.4th 186, 196, fn. 5; *People v. King* (2010) 183 Cal.App.4th 1281, 1319-1310 [a court has no duty to instruct on a lesser included offense when the evidence shows the defendant is either guilty of the charged crime or not guilty of any crime].) Accordingly, the court did not err by failing to give a grand theft instruction in this case.

DISPOSITION

The judgment is affirmed.

MᴄCONNELL, P. J.

WE CONCUR:

NARES, J.

AARON, J.