Filed 2/29/16  P. v. Duran CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B260495 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA099338) |
| v. | |
| ERNEST M. DURAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Thomas C. Falls, Judge.  Affirmed as modified.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Ernest M. Duran appeals from his conviction of attempted first degree murder, contending that the trial court erred by failing to instruct the jury on the lesser included offense of attempted voluntary manslaughter. We conclude that there was insufficient evidence to warrant that instruction, and, after modifying the judgment to correct two sentencing errors, affirm the judgment as modified.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of September 4, 2012, Ernest Duran stabbed Carol Yang several times in the neck and torso. Yang survived and Duran was later convicted of attempted first degree murder and mayhem. Yang was a heavy methamphetamine user and had met methamphetamine dealer Duran about one month earlier. The two had a brief romantic relationship that had recently ended, although they remained friends.

On September 2, 2012, Yang drove two of Duran's friends to a liquor store. Yang went into the store and left Duran's friends in her car with the engine running. When she came back out, her car was gone. At Yang's request, Duran agreed to use his influence to get her car back. Over the next day or so, Yang grew increasingly impatient with the delay in getting her car returned and both texted and phoned Duran multiple times to express her increasing frustration. At one point, she let Duran know she would report her car as stolen if it were not returned soon.

During this 24-hour or so period, Yang traveled about and hung out with numerous relatives or acquaintances of Duran. She also used a great deal of methamphetamine during that same period.[1]

Yang retrieved her car sometime on the evening of September 3, 2012. After discovering that the car had been damaged and that some of her possessions were missing, she texted Duran and insisted that he have her things returned. She also texted Duran that he was a "punk ass bitch" and that she was so angry that he "better kill [her]."

---

[1]     Sometime after she was attacked, Yang's methamphetamine use led to her temporary involuntary commitment after she began exhibiting delusional and paranoid behavior.

About three to four hours later, Duran showed up at the house where Yang was visiting. Without saying a word, Duran walked up to Yang and began choking her. Yang described Duran's demeanor as a furious yet calm and controlled anger. Duran stopped choking Yang when she said she would not resist. Duran then grabbed Yang's wrists and walked her outside toward a bike path that ran alongside a nearby riverbed. Yang told Duran that if he intended to harm her, she would respect him more if he used "his hands or a knife" instead of a gun. Duran walked Yang to the riverbank and had her sit on a boulder. He then began stabbing her repeatedly. According to Yang, Duran stopped stabbing her and ran off when she called out his name.

Although Yang told the police right after the incident that it was Duran who stabbed her, in February 2014 she identified Joel Vasquez as her attacker during a live lineup in which Duran did not participate. Yang later explained that she identified Vasquez because of certain similarities with Duran's appearance. She thereafter steadfastly maintained that it was Duran who attacked her, not Vasquez.

Vasquez was a member of the same street gang as Duran, but was considered far more junior to Duran. Duran called Vasquez as a defense witness, and Vasquez testified that it was he who attacked Yang, not Duran. According to Vasquez, Yang asked to buy $100 worth of methamphetamine from him but tried to get away with paying him just $40. Vasquez claimed that he snapped because he was high on meth at the time. At the time of the trial, Vasquez was serving a sentence of 47 years to life for robbery, and he and Duran had been cellmates for two months sometime before Duran's trial began. The prosecutor impeached Vasquez with certain inconsistencies in both his conduct and statements in the time since Yang was stabbed. A gang expert also testified that one gang member might take the fall for another in order to enhance his own prestige within the gang and to secure protection for his family.[2]

---

[2] The jury obviously disbelieved Vasquez, and Duran does not contend on appeal that there were any errors in connection with that finding. We therefore state the facts concerning Vasquez's admission in brief.

After the parties rested, Duran asked the trial court to instruct the jury on the lesser included offense of attempted voluntary manslaughter, arguing that evidence of Yang's repeated provocative taunts and threats in the hours before the attack showed that he had been sufficiently provoked to invoke that defense. The trial court declined to give the instruction because it was inconsistent with Duran's defense that Vasquez had attacked Yang, and because there was insufficient evidence to warrant the instruction.

In addition to attempted first degree murder, Duran had been charged with aggravated mayhem (Pen. Code, § 205).[3] The information also alleged various sentencing enhancements, two of which are relevant here: a five-year enhancement based on Duran's previous conviction of a serious felony (§ 667, subd. (a)(1)), and a one-year enhancement for having served a prior prison term (§ 667.5, subd. (b)) for the same offense. Although the jury convicted Duran of attempted first degree murder, it acquitted him of the aggravated mayhem charge and instead convicted him of the lesser included offense of simple mayhem (§ 203). The trial court found true all the prior conviction allegations and imposed a combined state prison term of life plus 13 years.

## DISCUSSION

1. *The Trial Court Properly Declined to Instruct on Attempted Involuntary Manslaughter*

Because a defendant has a constitutional right to have the jury determine every material issue presented by the evidence, the trial court must instruct on lesser included offenses whenever there is substantial evidence to support such a verdict. (*People v. Cole* (2004) 33 Cal.4th 1158, 1215 (*Cole*).) The duty to instruct does not exist if there is not sufficient evidence to support a verdict on the lesser offense. (*Ibid.*) We independently review whether the trial court erred by failing to instruct on a lesser included offense. (*Ibid.*)

---

[3]     All further undesignated section references are to the Penal Code.

Voluntary manslaughter is a lesser included offense of murder. (*Cole, supra,* 33 Cal.4th at p. 1215.) The offense is defined as the unlawful killing of a human being without malice aforethought "upon a sudden quarrel or heat of passion." (§ 192; *Cole,* at p. 1215.) "Heat of passion" must be shown both subjectively and objectively. Therefore, in addition to showing that he was actually, subjectively in such a state, the defendant must also show that an ordinary, reasonable person would have been similarly provoked. (*Id.* at pp. 1215-1216.)

The subjective element of voluntary manslaughter requires proof that the defendant killed while under the influence of a strong passion resulting from the victim's provocation. (*People v. Moye* (2009) 47 Cal.4th 537, 550.) If sufficient time to cool off has elapsed between the provocation and the fatal blows, however, the killing is not the result of voluntary manslaughter. (*Ibid.*) The objective element of voluntary manslaughter is not established where the provocation consisted of a simple assault, or taunts, insults, or challenges that the defendant should use a weapon if he had one. (*People v. Enraca* (2012) 53 Cal.4th 735, 759 [insults or gang related challenges insufficient]; *People v. Gutierrez* (2009) 45 Cal.4th 789, 826-827.)

With these principles in mind, we conclude there was insufficient evidence to warrant an attempted voluntary manslaughter instruction. First, Yang testified that up to four hours elapsed between her last communication with Duran and his appearance at the home where she was visiting. As a result, Duran had sufficient time to cool off before he first attacked Yang by choking her.[4] He then took even more time to lead her out of the house and down the bike path before he began stabbing her. Second, Yang's conduct consisted of nothing more than the types of taunts, insults, and challenges that have been

---

[4] At oral argument Duran's counsel argued that there was evidence Yang and Duran had a heated phone conversation shortly before Duran appeared at the house where Yang was visiting. This is based on the testimony of someone who was at that house, but the witness did not know to whom Yang was speaking, and Yang never claimed that the caller had been Duran. The only communications with Duran to which Yang testified were the several texts that ended some four hours before Duran attacked her. Therefore no inference arises that Yang was arguing with Duran during a phone call shortly before the incident.

5

deemed insufficient to satisfy the objective provocation prong of voluntary manslaughter. Finally, Yang testified that although Duran was angry, he was also calm and controlled.

Duran relies on three court decisions to support his contention that there was sufficient evidence of provocation. Each is distinguishable. In *People v. Barton* (1995) 12 Cal.4th 186, the defendant and the victim were engaged in a heated argument. The defendant drew a gun because he believed the victim was holding a knife, screamed at the victim, and shot him. (*Id.* at pp. 191-192.) In *People v. Millbrook* (2014) 222 Cal.App.4th 1122, the victim had been belligerent throughout the night, engaging in shouting matches with, and making threatening statements to, other partygoers. The victim escalated a fight with the defendant and lunged at him with clenched fists right before being shot. (*Id.* at p. 1141.) In *People v. Thomas* (2013) 218 Cal.App.4th 630, the victim and two other people had fought with the defendant and dragged him across a parking lot, the victim and defendant had a history of disputes over parking spaces, the defendant retrieved a gun from his car and was crying and calling out for his father, and then shot the victim because he believed the victim was lunging toward him. (*Id.* at p. 645.)

In each of those decisions the defendant and victim were either in the middle of or had just concluded intense verbal or physical confrontations, and in two of them, there was evidence that the victims were about to attack the defendants. As discussed above, the evidence here shows that after Duran travelled to the house where Yang was visiting some four hours after receiving what were at most taunts and insults. That evidence was insufficient to warrant an attempted voluntary manslaughter instruction.[5]

---

[5]     As a result, we need not reach respondent's contentions that the instruction was properly rejected because it was inconsistent with Duran's defense that Vasquez had attacked Yang, or that if error occurred it was harmless because the jury found that Duran had acted with willful, premeditated deliberation.

2.      *Two Sentencing Errors Require Modification*

In connection with the attempted murder count, the trial court imposed both a five-year sentence enhancement (Pen. Code, § 667, subd. (a)(1)) and a one-year sentence enhancement (Pen. Code, § 667.5, subd. (b)) based on Duran's 2004 conviction in case No. KA064610 for driving with wanton disregard for the safety of others while fleeing a pursuing peace officer. (Veh. Code, § 2800.2.) Duran contends, and respondent concedes, that it was improper to impose both enhancements for the same conviction. We agree with respondent that the proper remedy is to strike the one-year enhancement imposed under Penal Code section 667.5, subdivision (b). (*People v. Jones* (1993) 5 Cal.4th 1142, 1149-1151, 1153.)

The trial court also awarded Duran actual custody credits of 809 days but failed to award any presentence custody credits, as required by Penal Code section 2933.1. Both parties agree that the trial court erred and that the correct amount of presentence custody credits is 121 days. We will order that the abstract of judgment be modified accordingly.

## DISPOSITION

The abstract of judgment is modified to eliminate the one-year sentence enhancement imposed on the attempted murder conviction under section 667.5, subdivision (b) based on Duran's 2004 conviction in case No. KA064610. The abstract is also modified to state that Duran is awarded 121 days of presentence custody credits. The trial court is directed to prepare a modified abstract of judgment that reflects these changes and forward a copy to the Department of Corrections and Rehabilitation. The judgment as modified is affirmed.


                                        RUBIN, J.
WE CONCUR:


        BIGELOW, P. J.                                FLIER, J.


7