Filed 4/27/16  P. v. Garcia CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B264294 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA131927) |
| v. | |
| FELIPE GARCIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Schultz, Judge.  Affirmed.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven E. Mercer, Marc A. Kohm and Abtin Amir, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Defendant Felipe Garcia shot his ex-girlfriend's romantic partner three times at close range and then shot at police officers attempting to arrest him. He used his 16-month-old son as a shield to stop officers from shooting at him. On appeal, he challenges the sufficiency of the evidence of one count of premeditated attempted murder and argues that there was instructional error. We find no error and affirm the judgment of conviction.

**FACTS**

Defendant once lived with and was romantically involved with Nancy Magana, and they had one child together. At the beginning of January 2014, Magana began dating Miguel Ibarra. At the end of January 2014, defendant wanted to rekindle his romance with Magana. Defendant told Magana "if I [(Magana)] wasn't going to be with him, I [(Magana)] wasn't going to be with somebody else."

On January 25, 2014, defendant saw Magana, who was driving Ibarra's truck. Defendant took Magana's keys. Although he returned the keys, he hit the truck with his bumper as Magana drove away.

On January 26, 2014, defendant wrote Magana a series of text messages. He told her that he wanted to get back together with her. Magana responded that she would think about it. Defendant also cautioned her that "if you're not mine you're not going to be anyone else's." Referring to Ibarra, defendant further warned Magana: "I'm going to break this guy."

Also on January 26, 2014, Ibarra waited in his truck outside Magana's home as she prepared to go dancing with him. Defendant went to Magana's home, walked up to Ibarra's truck, asked Ibarra to lower the window, and then shot at Ibarra three times. One bullet hit Ibarra's jaw and another hit his shoulder. The third did not hit Ibarra.

Ibarra testified that after defendant signaled him to lower the window, Ibarra called Magana, referred to defendant as an "asshole," and saw Magana come outside near his truck. Ibarra testified that he did not argue with defendant. As a result of the

2

shooting, Ibarra lost four teeth, could eat only liquids for three months while his mouth was wired shut, and lost mobility in his left arm.

Magana testified that defendant stood about three to four feet from Ibarra during the shooting. Magana struggled with defendant to obtain his gun but was unsuccessful. Magana testified that just prior to the shooting, Ibarra referred to defendant as a "son of a bitch" and told him to "fuck off." After the incident defendant cried and warned Magana not to say anything. Defendant said, "don't call the police, I got the baby with me." Defendant was referring to his 16-month-old son, who was not Magana's child.

Defendant left Magana's residence. When officers stopped him, defendant put his car in reverse and sped away. He led peace officers on a high speed chase, but they were able to follow him with the assistance of a helicopter.

Defendant returned to Magana's home. He exited his vehicle holding his gun in one hand and holding his 16-month-old son as a shield in his other hand. Defendant unsuccessfully tried to convince Magana and her family to allow him to enter the house.

Nine peace officers had arrived at Magana's home to assist in arresting defendant. Defendant ignored the peace officers' commands to drop his weapon and release his child. Deputy Sheriff Jesus Rubio testified that defendant fired two rounds, including one directly at deputies. Deputy Sheriff Michael Coberg watched as defendant pointed his gun and fired at deputy sheriffs. Coberg testified that defendant shot at him. Deputy sheriff Carlos de la Torre also testified that defendant shot in his direction and in the direction of the deputies who stood behind a white truck. Deputy Sheriff Jaime Fernandez testified that defendant pointed his gun at him and his partner. Fernandez further testified that defendant aimed at him when he fired his first shot. Deputy Sheriff Ernesto Castaneda testified that defendant pointed his gun at the deputies and shot in their direction. Defendant stipulated that all the deputy sheriffs present at Magana's house were peace officers.

## PROCEDURE

Defendant was charged with three counts of attempted premeditated murder (Ibarra, and two sets of peace officers), false imprisonment (defendant's son), child abuse (defendant's son), possession of a firearm by a felon, nine counts of assault with a firearm on a peace officer, and possession of ammunition. As to the attempted murder of Ibarra, it was alleged that defendant personally discharged a firearm causing great bodily injury. As to the other attempted murders and the assaults with a firearm it was alleged that defendant personally discharged a firearm. It further was alleged defendant suffered a prior strike and a prior serious felony conviction.

Defendant was tried by jury.

The following translation of defendant's text messages from January 26, 2014, was admitted into evidence:

> "FELIPE:  Wat kan uanswer me                                      9:09 pm
>
> "FELIPE:  R u happy with him                                        9:10 pm
>
> "NANCY:  Leave me alone already!  Remember I told u . . N u     9:13 pm
> didn't care
>
> "FELIPE:  Just remember what you told me if I'm not yours I     9:15 pm
> won't be anyone else's And now I'm telling you if you're not
> mine you're not going to be anyone else's
>
> "FELIPE:  and that I swear on my kids                              9:17 pm
>
> "FELIPE:  what you are not going to answer me                 9:29 pm
>
> "FELIPE:  R u ok                                                          10:05 pm
>
> "NANCY:  Yes why? Wat do u want                               10:05 pm
>
> "FELIPE:  I'm out sis                                                     10:06 pm
>
> "FELIPE:  I'm going to break this guy                            10:08 pm"

Defendant admitted the prior convictions. No witness testified for the defense.

The court denied defendant's requested voluntary manslaughter instruction. Jurors were instructed that they had to determine whether the attempted murder "was done

4

willfully and with deliberation and premeditation." Jurors were further instructed: "The defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully weighted the consideration for and against his choice and, knowing the consequences, decided to kill. The defendant premeditated if he decided to kill before acting."

Jurors found defendant guilty as charged except the jury did not find one of the attempted murders (of the peace officers) was premeditated and deliberate.

## DISCUSSION

Defendant argues that with respect to the attempted murder of Ibarra, the record lacked substantial evidence of premeditation and deliberation. He also argues that the court erred in refusing to instruct jurors on voluntary manslaughter. As we shall explain, we find no error.

### 1. Substantial Evidence Supported the Verdict

Defendant argues no substantial evidence supported the premeditation finding. According to defendant, "there was no evidence of any preplanning or preparation prior to the assault . . . ." Defendant cites *People v. Anderson* (1968) 70 Cal.2d 15, 26-27, which suggested a reviewing court consider the following factors in determining whether there is evidence of premeditation and deliberation: (1) prior planning activity; (2) motive; and (3) manner of the killing. These factors are not exclusive. (*People v. Perez* (1992) 2 Cal.4th 1117, 1125.) Defendant's argument is meritless.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the

5

existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

Contrary to defendant's argument, ample evidence suggested preplanning activity. Defendant armed himself prior to going to Magana's house. (*People v. Lee* (2011) 51 Cal.4th 620, 636 [evidence defendant brought a loaded handgun suggested he "considered the possibility of a violent encounter"].) Just before the shooting, defendant asked Ibarra to lower the window, supporting the inference that he was planning to shoot Ibarra. Additionally, defendant warned Magana that she could not be with anyone else, and his warning supported the inference that he planned to kill Magana's paramour.

Additional evidence supported the jury's premeditation finding. The day of the shooting, defendant texted Magana letting her know "I'm going to break this guy." Motive was clear as defendant wanted to hurt Ibarra and was jealous that Ibarra was dating Magana. The manner also supported premeditation as defendant fired multiple shots from close range. The number of shots does not suggest an accident or unplanned shooting. In short, there was sufficient evidence from which the jury could have found defendant committed the attempted murder of Ibarra with premeditation and deliberation.

## 2. *The Trial Court Properly Denied Defendant's Request for an Instruction on Attempted Voluntary Manslaughter*

### a. No Evidence Warranted an Attempted Voluntary Manslaughter Instruction

Defendant argues the court should have instructed jurors on attempted voluntary manslaughter because there was evidence of provocation. We disagree.

The trial court was required to instruct jurors on attempted voluntary manslaughter only if substantial evidence supported the instruction. (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.) "'"Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive."'" (*Ibid.*) "'[T]he existence of "*any* evidence, no matter how weak" will not justify instructions on a lesser included offense . . . .'" (*People v. Moye* (2009) 47 Cal.4th 537, 553.)

6

Provocation distinguishes voluntary manslaughter from murder. (*People v. Avila, supra*, 46 Cal.4th at p. 705.) "'The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim.' [Citation.] '[T]he victim must taunt the defendant or otherwise initiate the provocation.' [Citations.] The '"heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances . . . ."' [Citation.] '"[I]f sufficient time has elapsed for the passions of an ordinarily reasonable person to cool, the killing is murder, not manslaughter."'" (*Id.* at p. 705.)

Here, interpreting the evidence in the light most favorable to defendant there was no substantial evidence of provocation. (*People v. Manriquez* (2005) 37 Cal.4th 547, 585 [court should not determine credibility in deciding whether to give instruction on lesser included offense].) Ibarra did not taunt defendant. Ibarra remained seated in his vehicle throughout the interaction with defendant. At most, Ibarra referred to defendant as a "son of a bitch," an "asshole," and told him to "fuck off." That name calling is not sufficient to support heat of passion in the mind of an ordinarily reasonable person. (*Id.* at p. 585 [calling someone a "mother fucker" insufficient to warrant heat of passion instruction]; *People v. Lucas* (1997) 55 Cal.App.4th 721, 739-740 [no heat of passion instruction warranted based on smirking and dirty looks].) The fact that defendant was jealous of Ibarra's relationship with Magana also does not show that defendant acted in the heat of passion. (*People v. Hyde* (1985) 166 Cal.App.3d 463, 473 [defendant's passion must be the result of provocation, not jealousy over an ex-girlfriend's romantic partner].)

Nor was there evidence defendant acted in the heat of passion, i.e., under the actual influence of extreme emotion. There was no evidence defendant exhibited anger or otherwise acted under the heat of passion. (*People v. Manriquez, supra*, 37 Cal.4th at p. 585.) Defendant did not testify and no witness supported his claim on appeal that he

7

was distraught, agitated, or "freaked out" when he shot Ibarra.[1]  There was evidence that defendant cried after shooting Ibarra, but his tears, which came with a warning not to call the police, occurred after the shooting and do not support the inference that he was agitated and acting under the influence of an extreme emotion prior to the shooting.

**b.  Assuming Error, There Was No Prejudice in Failing to Instruct on Heat of Passion**

The instruction defendant sought on heat of passion asked jurors to determine whether defendant "act[ed] rashly and without deliberation and reflection" or that he acted "without due deliberation and reflection."  (CALJIC No. 8.42 [Sudden Quarrel or Heat of Passion and Provocation Explained]; CALCRIM No. 570 [Voluntary Manslaughter; Heat of Passion—Lesser Included Offense].)  Assuming the instruction on heat of passion should have been given, the failure to give it was harmless beyond a reasonable doubt because the jury found the attempted murder of Ibarra was willful, deliberate and premeditated.  (*People v. Peau* (2015) 236 Cal.App.4th 823, 832 (*Peau*).)

"'Error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to [the] defendant under other properly given instructions.'"  (*Peau, supra*, 236 Cal.App.4th at p. 830.)  The jurors conclusion that defendant acted willfully and with

---

[1]  *People v. Barton* (1995) 12 Cal.4th 186 does not assist defendant.  In *Barton*, an instruction on heat of passion was warranted because there was evidence the defendant and victim angrily confronted each other before the killing.  (*Id*. at p. 202.)  There also was evidence the victim "taunted" the defendant.  (*Ibid*.)  Further there was evidence the defendant was screaming and swearing prior to the shooting.  (*Ibid*.)  No similar evidence was presented in this case.

Defendant's reliance on *People v. Thomas* (2013) 218 Cal.App.4th 630 is misplaced.  In that case a voluntary manslaughter instruction was warranted because "minutes before he killed [the victim], [the defendant] had been involved in an argument and physical altercation" with the victim and others.  (*Id*. at p. 645.)  There was evidence the victim "lunged" at the defendant before he defendant pulled the trigger and that the defendant "fired because he was afraid, nervous and not thinking clearly."  (*Ibid*.)  No similar evidence was presented in this case.

premeditation and deliberation forecloses his argument that he acted "rashly and without due reflection and deliberation." Jurors necessarily determined the factual question— they determined defendant acted with premeditation not without reflection. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1139 [a finding of premeditated attempted murder inconsistent with heat of passion theory].)

Defendant argues that our high court has held both that a finding of premeditation is not dispositive (*People v. Berry* (1976) 18 Cal.3d 509, 512-518 (*Berry*)) and that a finding of premeditation forecloses a heat of passion argument (*People v. Wharton* (1991) 53 Cal.3d 522, 572 (*Wharton*)). Defendant further argues this court should follow *Berry*. Defendant's argument was persuasively rejected by the First District. *Peau, supra*, 236 Cal.App.4th at pages 831-832, explained: "While we acknowledge that there is some tension between the holdings in *People v. Berry, supra*, 18 Cal.3d 509 and *People v. Wharton, supra*, 53 Cal.3d 522, we believe they can be reconciled and that *Wharton*'s more recent reasoning is directly on point in this case. The jury here was instructed that it could not return a verdict of first degree murder unless it found that Peau 'carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill.' We agree that such a finding 'is manifestly inconsistent with having acted under the heat of passion.' (*Wharton*, at p. 572.) Although *Berry* refused to find an error in omitting a heat-of-passion instruction harmless, it did not even mention that first degree murder must be willful, deliberate, and premeditated. Instead, it focused only on the fact that the instruction distinguishing between first and second degree murder in that case 'made passing reference to heat of passion and provocation for the purpose of distinguishing between' the two types of murder. (*Berry*, at p. 518.) We think this strongly suggests that the sole issue considered in *Berry* was whether the error was harmless because the jury received some instruction on the concepts of heat of passion and provocation, not whether the error was harmless because the jury found the murder was willful, deliberate, and premeditated and such a finding was inconsistent with a finding that the defendant acted in a heat of passion."

Here, just as in *Peau*, jurors were instructed that defendant deliberated "if he carefully weighted the consideration for and against his choice and, knowing the consequences, decided to kill." To the extent that *Berry* and *Wharton* are inconsistent, we conclude that the more recent case *Wharton* forecloses defendant's argument that he suffered prejudice from the failure to instruct on voluntary manslaughter because defendant fails to explain how he could both weigh the consideration of his choice and act rashly. In short, defendant demonstrates neither instructional error nor prejudice from the alleged error.

## DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.

10